### MILLS et al. v. KELLAHIN et al.
No. 3348.

Court of Civil Appeals of Texas. El Paso.
Feb. 27, 1936.

Rehearing Denied March 19, 1936.

G. B. Fenley, of Uvalde, B. W. Teagarden, of San Antonio, and Ditzler H. Jones, of Uvalde, for appellants.

Hervey, Dow, Hill & Hinkle, of Roswell, N. M., Morriss & Morriss, of San Antonio, and K. K. Woodley, of Sabinal, for appellees.

HIGGINS, Justice.

On July 11, 1933, Capt. Jason W. James executed his will by which he gave his estate, share and share alike, to a niece, Jennie James McClenny, and Fina Bell Bender, the daughter of a first cousin. He appointed O. A. Mills independent executor without bond. On the following 14th of September, Capt. James died at the age of 90. The application of the executor to probate the will was contested by the heirs at law of the testator consisting of the said Jennie James McClenny, Lily James Kellahin, nieces of the testator, and their husbands, and a nephew, Jason Gilmore Urton, a minor. In the county court the will was admitted to probate. The contestants appealed to the district court, where the case was submitted to a jury upon the issues raised by the pleadings, namely, testamentary capacity and undue influence exercised by Mrs. Bender. The issue of testamentary capacity was submitted in the first issue. The issue of undue influence was submitted conditional upon a finding that testator had testamentary capacity at the time he executed the will. In connection with the issue of testamentary capacity the court charged: "That for a person to have 'testamentary capacity' as that term is used in said issue, such person at the time of execution of the

will must have had sufficient mental ability to understand the business in which he was engaged, the effect of his act in making the will, and the nature and extent of his property; he must be able, also, to know his next of kin and the natural objects of his bounty and their claims upon him; *he must have memory sufficient to collect in his mind the elements of the business to be transacted and to hold them long enough to perceive at least their obvious relation to each other, and be able to form a reasonable judgment as to them."* (Italics ours.)

Upon the issue of testamentary capacity it was found testator did not have such capacity and the issue as to undue influence was not answered. Judgment followed conforming to the findings from which Mrs. Bender and husband, and Mills appeal.

### Opinion.

The points presented by appellants may be briefly summarized as follows:

1. The finding that the testator lacked testamentary capacity at the time he executed the will is contrary to the undisputed evidence; or in any event is so contrary to the great weight and preponderance of the evidence it should be set aside.

2. The conditional submission of the issue of undue influence operated to inform the jury of the effect of their answer to the issue of testamentary capacity.

3. The italicized portion of the instruction above quoted was unnecessary, improper, and erroneous in view of the preceding portion of such instruction.

4. Error in the admission of testimony of certain nonexpert witnesses as to the mental condition of the testator.

These contentions present no novel question of law or fact. They call for no extended discussion.

Capt. James was a very aged man at the time he executed his will and for a long time previous thereto had been in feeble health, ravaged by disease. Dr. Pruitt, medical consultant at the Scott-White Clinic, Temple, Tex., where Capt. James was taken August 8, 1933, testified: "A diagnosis was made. Chronic nephritis, myocarditis, chronic arteriosclerosis, general; dermatitis, lower extremities, senile type; bilateral cataract, epithelioma lower left eyelid. Chronic nephritis is a chronic or long standing degenerative kidney condition. Due to the fact that toxic materials normally eliminated by the kidneys are retained within the body, it leads to the collection of fluid in the tissues and different organs of the body together with a retention of waste products throughout the body. Chronic nephritis is the disease that is referred to commonly as 'Bright's disease.' Yes, this disease has effect on all the organs of the body. Chronic nephritis in an elderly person is always associated with arteriosclerosis, and not only involves the kidneys, but the brain as well. Myocarditis chronic means a degenerative condition of the heart muscle. It further impairs one's health not only because of a degeneration of heart function, but also because it causes secondary congestion of the other organs of the body because of impaired circulation. The term arteriosclerosis, general, means a generalized thickening and hardening of the blood vessels, veins, arteries,—it involves both—means principally arteries. Concerning the effect of arteriosclerosis on the sufferer, because of deficient blood supply, it causes a generalized degenerative type of syndrome. Concerning its effect on the brain, it leads to degenerative changes just as in any other part of the body. Dermatitis, lower extremities, senile type, is condition due to deficient blood supply. It is the same term as eczema, —bilateral cataract means the clouding of the lens of each eye,—epithelioma, lower left eyelid, means—cancer of the skin,—I got a history of Jason W. James' case from him. From my examination and the history I got from the patient, the chronic nephritis was progressive and degenerative. The same thing is true of the arteriosclerosis. In my opinion, this chronic nephritis existed for a period of years, and the same thing is true of arteriosclerosis. By the term 'progressive' as I have used it in the preceding answer, I mean the condition which, by its presence, leads to a continuous change in the body tissues. That means that the disease, as it progresses, gets worse. That would be true of both chronic nephritis and arteriosclerosis. From the examination that I made—and the conversation— I could express an opinion as to his mental capacity. The physical findings were of such a chronic nature that they were not of short standing, but of long standing, and there would be very little material change in a period of a relatively few months,—I am familiar with the effect on the mind of an elderly person of degenerative processes caused by chronic nephritis and arteriosclerosis. These degenerative processes are generally spoken of as senile changes, in ordinary terms, what we usually hear spoken of as senile decay. Ordinarily, the effect on the mind of a

person 90 years old, of a condition such as I discovered in Captain James, they are very childish, live in the past, their memory is very poor for recent events, because the brain cells are not receptive of recent impressions; those in the past come forward very vividly because they were made at an earlier date, when the mind was more receptive. In February, 1933, it would be very easy or hard to influence Captain James in business transactions, depending on the way the transaction happened to impress him at the time. I do not believe, from the conversations with an examination of Captain James, that his mind was in such condition in August, 1933, or February, 1933, that he would have withstood influence extending over a period of several months. The external signs, generally speaking, of his trouble were: Pitting of the edema of the lower extremities (legs); dermatitis legs (breaking out of the legs); tremor of hands (shaking of hands). That would be all you would notice just by looking at him."

Other doctors testified in response to hypothetical questions that Capt. James was suffering from senile dementia and of unsound mind, etc.

Various lay witnesses testified that in their opinion he was of unsound mind, etc., stating the facts upon which they based their opinions.

Acts and conduct on the part of the testator were shown indicative of an impaired mind.

It is true the testimony of Dr. Eads and various nonexpert witnesses support the view the testator possessed testamentary capacity, but the other evidence in the case amply supports the finding made upon the issue. This court would not be warranted in setting the finding aside.

■ As to the second point it may be assumed the conditional submission of the second issue had the effect asserted by appellant but it could not have been harmful. Every person of ordinary intelligence knows a mental incompetent cannot make a valid will. Long before this case was submitted to the jury, every juror upon it knew full well the testamentary capacity of Capt. James was in issue, and if the jury found he did not have such capacity at the time he executed the will such finding would invalidate the same. It would be an unwarranted reflection upon the intelligence of the jury which tried this case to assume they

did not know full well the effect of their finding upon the first issue regardless of the conditional submission of the issue of undue influence. The matter presents no error. Speer, Special Issues, p. 501; McFaddin v. Hebert, 118 Tex. 314, 15 S.W.(2d) 213.

■ The instruction given in connection with the first correctly explains the meaning of testamentary capacity. Speer, Special Issues, § 596; Prather v. McClelland, 76 Tex. 574, 13 S.W. 543; Rodgers v. Fleming (Tex.Com.App.) 3 S.W.(2d) 77.

■ The rulings upon evidence complained of present no error. 24 Tex.Jur. p. 425, § 42; Brown v. Mitchell, 88 Tex. 350, 31 S.W. 621, 36 L.R.A. 64.

Affirmed.