## VEGA v. GRIEGER.

### No. 10194.

Court of Civil Appeals of Texas.

Austin.

Jan. 27, 1954.

Rehearing Denied Feb. 17, 1954.

Carlos C. Cadena, San Antonio, David Longoria, Austin, for appellant.

Wofford, Fullerton & Barkley, Taylor, for appellee.

GRAY, Justice.

This suit was brought by appellant against appellee for damages for the alleged wrongful killing of her son, Arthur Vega. Art. 4671, Vernon's Ann.Civ.St.

Appellant alleged that appellee "willfully and maliciously killed Arthur Vega by shooting him with a gun." Appellee answered that the killing was done by him while in the discharge of his duty as a police officer in arresting Arthur Vega and his brother; that he acted in self defense, and that he used reasonable and necessary

force to overcome resistance and repel an attack made upon him.

A trial to a jury was had, evidence was heard and upon the verdict of the jury a judgment was rendered that appellant take nothing.

The cause was submitted to the jury on two special issues as follows:

"Special Issue No. 1:

"Do you find from a preponderance of the evidence that the action of Fred Grieger in shooting and killing the deceased, Arthur Vega, was wrongful?

"Answer 'Yes' or 'No.'

"Answer: No.

"If you have answered Special Issue No. 1 'Yes,' and in that event only, you will answer the following special issue:

"Special Issue No. 2:

"What amount of money, if any, do you find from a preponderance of the evidence would, if paid now, reasonably compensate the plaintiff, Matilda Vega, for the loss of pecuniary benefits, if any, sustained by her as a result of the death of Arthur Vega?

"Answer by stating the amount of dollars, if any, and cents, if any.

"Answer: $————."

Special issue 2 was not answered.

In his charge to the jury the trial court gave the following instruction:

"By the term 'wrongful,' as used in Special Issue No. 1, means the use by defendant of a greater degree of force than was reasonable and necessary under the circumstances then existing and that the defendant was not at the time acting in his own self-defense, as below explained. In this connection you are charged that if at the time of the killing the deceased or his brother by his or their acts or conduct reasonably induced the defendant to believe that deceased or his brother was about

to attack him with a deadly weapon which would probably cause defendant's death or some serious bodily injury, or if by the acts of the deceased or his brother, it reasonably appeared to defendant at the time, viewed from his standpoint alone, that deceased or his brother was then about to attack him with a deadly weapon which would probably cause defendant's death or some serious bodily injury, and if same was reasonably calculated to create in the mind of defendant, and did create in his mind, a reasonable expectation or fear of death or some serious bodily injury, and that defendant then and there, moved and actuated by such reasonable expectation or fear of death or serious bodily injury, shot and killed deceased, Arthur Vega, then under such circumstances the killing would be in his lawful self-defense and would not be 'wrongful.' It is not essential to the right of self-defense that real danger should exist. If from defendant's standpoint, and his standpoint alone, taking into consideration all the facts and circumstances surrounding the parties, it reasonably appeared to him that he was in danger of death or serious bodily injury, under the law he had the right to defend against such apparent danger to the same extent as if the danger were real, and if he shot and killed the deceased under such circumstances, the killing would not be 'wrongful.' "

The converse of this charge was not given.

The jury was also told to answer the issues "in the manner directed in connection with each of them"; not to consider any matter not before them in evidence under the rulings of the court, and not to consider the effect their answers might have "on the outcome of this case."

Appellant made various objections to special issue 1, that the charge quoted supra was incorrect, requested that certain special issues be given and objected to the instruction preceding issue 2 because it told the jury the effect of their answer to issue 1.

We have reached the conclusion that in any event this cause must be reversed and remanded because of the instruction preceding issue 2, and in view of another trial that we should notice the instruction quoted supra.

Rule 277, Texas Rules of Civil Procedure, provides that in all jury cases the court may, and upon the request of either party shall, submit the cause upon special issues "except that, for good cause subject to review or on agreement of the parties, the court may submit the same on a general charge." It also provides that the court shall submit such explanatory instructions and definitions of legal terms "as shall be necessary to enable the jury to properly pass upon and render a verdict on such issues" and that in such instances the charge shall not be subject to the objection that it is a general charge. The source of this rule is Art. 2189. This article provided for the submission of causes upon special issues and in connection therewith for the giving of such explanations and definitions of legal terms as are necessary to enable the jury to pass upon and render a verdict on the issues. Under that article the giving of a general charge has many times been held to be reversible error. Mayfield Co. v. Pepper, 129 Tex. 307, 103 S.W.2d 737. In Lamb v. Collins, Tex.Civ.App., 93 S.W.2d 490, 491, the Court said:

"It is an instruction on the law applicable to the case generally, and in a manner not necessary to a determination of the issue submitted to the jury."

In Humble Oil & Refining Co. v. Owings, Tex.Civ.App., 128 S.W.2d 67, at page 76, the Court made a distinction between "a general charge" and "a general instruction" and said:

"* * * there is a marked distinction to be drawn between a general charge and a general instruction. The former authorizes a verdict based upon the charge and of necessity informs the jury of the effect of their findings upon the judgment to be entered; while a general instruction does not have

that effect, but is only an aid to the jury in properly answering an issue."

■ Rule 277, supra, authorizes the submission of the cause on special issues and in instances on a general charge but it does not authorize such submission on both methods at the same time.

In Roosth & Genecov Production Co. v. White, Tex.Sup., 262 S.W.2d 99, the Court condemned the submission of causes "globally" or on general issues except in cases where the facts result in "fire hazard" or "cruel treatment." Causes involving an unlawful or wrongful killing was not there recognized as an exception.

It may be conceded that the charge quoted supra is substantially in the form of the charge given in Barrow v. Barclay, Tex.Civ.App., 269 S.W. 235, error ref. The Court held the charge was not a general charge.

In McMurrey Corporation v. Yawn, Tex. Civ.App., 143 S.W.2d 664, error ref., the Court held it was reversible error not to include the term "wrongful" in the court's charge preceding the special issue inquiring if the killing was wrongful and cited Barrow v. Barclay, supra, and Whitaker v. Haynes, Tex.Civ.App., 128 S.W.2d 532, error dism., judgm. cor. In the latter case the trial court defined the terms assault and battery in his charge. Appellant conceded the definitions to be correct and it was held the charge was not a general charge. The term "wrongful" was not used in the issues submitted.

■ The legal significance of the Supreme Court's refusal of a writ of error at the time Barrow v. Barclay, supra, was decided (1925) need not be here discussed for the reason that this cause is reversed and remanded on a point not involved in our discussion of this part of the charge. However we think that upon another trial the cause should be submitted on issues properly raised by the pleadings and the evidence accompanied by such definitions of legal terms and explanatory instruction, if any, as will enable the jury to evaluate the

evidence before them and answer the respective issues from the evidence unhindered by instructions as to what facts will or will not constitute the answer. The jury should not be told in direct language that specified facts would or would not constitute the killing "wrongful" if that term is again used, but the jury should be left free to find such result from the evidence. Kemper v. Police & Firemen's Ins. Ass'n, Tex.Com.App., 48 S.W.2d 254; Connecticut General Life Ins. Co. v. Warner, Tex. Civ.App., 94 S.W.2d 514, error ref.

In Grasso v. Cannon Ball Motor Freight Lines, 125 Tex. 154, 81 S.W.2d 482, 487, the Court considered the submission on special issues in a suit for damages for personal injuries. Along with issues relative to alleged negligence of the defendant there was submitted an issue as to the alleged contributory negligence of the plaintiff and the damage issue. Preceding this latter issue the jury was instructed to answer it if in answer to foregoing issues they had found defendant guilty of negligence and also found that the plaintiff was not guilty of negligence contributing to the accident, "otherwise, you need not answer the following question". (The damage issue.) The Court said:

"Counsel for Grasso contend that it is the law of this state that it is not reversible error to instruct a jury to the effect that affirmative or negative answers to certain questions will relieve them of the duty of answering certain other questions. We agree to this contention in some instances. In spite of this, it is certainly not proper for the court to tell the jury the ultimate result of all of their answers in submitting a case on special issues. In our opinion, the instruction preliminary to question No. 15, supra, in effect did exactly that. It will be noted that the instruction directed the jury that if they convicted the defendant of negligence and acquitted the plaintiff of contributory negligence, to find the amount of the plaintiff's damages, otherwise not. Such an instruction clearly told the jury that they must find the defendant guilty of negligence, and the plaintiff not guilty of contributory negligence, in order for the plaintiff to recover. Such a charge is undoubtedly in violation of our special issue statutes. It was a general charge, and informed the jury of the result of all of their answers. On another trial the issue of damages should be submitted without the above-quoted preliminary instruction."

In Schroeder v. Rainboldt, 128 Tex. 269, 97 S.W.2d 679, 684, the Court considered issues and instructions on findings as to unavoidable accident of like character to those before the Court in Grasso v. Cannon Ball Motor Freight Lines, supra. The Court cited that case and said:

"It is not always reversible error to instruct a jury in the charge to answer or not answer a certain issue conditioned upon the answer to another, but in this instance the instruction was in connection with an answer to an issue that determined the case if in accordance with the second alternative. For this reason the instruction constituted reversible error."

Under Art. 2189, supra, it has been held that the trial court should not so frame a charge or an issue that the jury may know therefrom what the effect of the answer thereto shall be upon the judgment to be rendered. Continental Oil Co. v. Barnes, Tex.Civ.App., 97 S.W.2d 494, error ref.

In McFaddin v. Hebert, 118 Tex. 314, 15 S.W.2d 213, 216, the Court considered, on certified question, an argument made by counsel wherein he told the jury how certain issues should be answered and further said the issues must be so answered " 'in order to constitute a verdict for the plaintiff' ". The Court said:

"Clearly, the prime object, purpose, and intent of the law for submitting cases on special issues is to remove the jury from any bias in favor of, or prejudice against, either party to the

suit, to relieve them from the duty of directly passing on who shall prevail in the suit, and to make it the duty of the jury to answer each question truly as they find the facts to be from the evidence, without regard to what the result of their answers may be. If the court or the attorney, or any one else, is allowed to tell the jury the legal result of the answers, and to appeal to them in argument to so frame their answers so as to accomplish a result rather than to answer the issues truly as they find the facts to be from the evidence, or if the jury is permitted to agree on the result, and then designedly form the answers to accomplish such result, the law providing for special issue verdicts would be an idle and vain thing."

We have not found a decision by our Supreme Court, and none has been called to our attention, wherein that Court has applied the holdings in Grasso v. Cannon Ball Motor Freight Lines and Schroeder v. Rainboldt to the present rules of civil procedure. However we think that Rule 277 is not such a departure from the provisions of Art. 2189 as to relieve the rule of the pronouncements of those decisions. In Boaz v. White's Auto Stores, 141 Tex. 366, 172 S.W.2d 481, 484, the Court noted that in Rule 277, supra, the words "explanatory instructions" are substituted for "explanations" as used in Art. 2189. By quotation the Court appears to hold that Rule 277 " 'does not license an unlimited use of general charges in a special issue case' ", but authorizes such charges only when they will aid the jury in rendering a verdict. This to our minds means answering the issues propounded.

In Lowrance v. Kenworthy, 1942, 138 Tex. 132, 157 S.W.2d 879, 881, the Court said the reason for condemning arguments which tell the jury the effect of their answers to issues is stated in McFaddin v. Hebert, supra, and quoted therefrom as we have quoted, supra, and said:

" * * * the improper argument informed the jury of the effect an af-firmative or negative answer to an issue or issues would have upon the judgment to be rendered. The vice in such argument is that it seeks and tends to induce the jury to answer issues in order to attain as a result a judgment for one of the parties rather than to answer the issues from the facts in evidence."

■ The instruction preceding issue 2, supra, told the jury in effect that no damages were recoverable if issue 1 was answered "No," and was an instruction "in connection with an answer to an issue that determined the case."

An instruction from the court must be regarded as having much more force to a jury than the argument of counsel and if the court is to tell the jury the effect of their answers then the law providing for special issue verdicts will be rendered "an idle and vain thing."

It is no answer to the question before us to say that the jury may have known, or did know, that unless issue 1 was answered "Yes" appellant could not recover damages. "The conditions as they existed at the time the charge was given and not after the verdict control." Schuhmacher Co. v. Holcomb, 142 Tex. 332, 177 S.W.2d 951, 953. If it was error to give the instruction the verdict did not cure the error and it is not necessary for us to speculate as to what the answer of the jury, on controverted evidence, may have been in the absence of the instruction because it told the jury the ultimate result of their answers. A good example of the seemingly prevailing practice of submitting causes on special issues and instructing the jury they need not answer certain issues unless they have answered preceding issues in a stated way is negligence cases. In those cases juries are often asked to find a fact and are told they need not answer the conditional issues of negligence and proximate cause, or, in a proper case, the issues of proximate cause, unless they have made a stated answer to the preceding issue. Usually such issues follow the pleadings that an alleged act was committed (or omitted),

that it was negligence (when necessary) and was a proximate cause of the alleged injury. Such instructions usually do not inform the jury as to the ultimate result of all their answers to issues.

The judgment of the trial court is reversed and this cause is remanded.

Reversed and remanded