FRED GRIEGER v. MATILDA VEGA

No. A-4577. Decided July 14, 1954.
Rehearing overruled October 13, 1954.
(271 S.W. 2d Series 85)

*Wofford, Fullerton & Barkley and J. R. Barkley,* of Taylor, for petitioners.

The Court of Civil Appeals erred in holding that instruction No. 2 told the jury the effect of their answer to special issue No. 1, and that the manner of submission of the issues was improper. Mills v. Kellahin, 91 S.W. 2d 1097, error dismissed; Burrow v. Davis 226 S.W. 2d 206; McMurrey Corp. v. Yawn, 143 S.W. 2d 664, error refused.

*Carlos C. Cadena,* of San Antonio, and *David Longoria,* of Austin, for respondent.

In response cited Boaz v. White's Auto Stores, 141 Texas 346, 172 S.W. 2d 481; Fox v. Dallas Hotel Co., 111 Texas 461, 240 S.W. 517; Theis v. Curtis, 33 S.W. 2d 754.

MR. CHIEF JUSTICE HICKMAN delivered the opinion of the Court.

This is a suit by respondent, Matilda Vega, against petitioner, Fred Greiger, for damages for the alleged wrongful killing of her son, Arthur Vega. Her petition alleged that petitioner "willfully and maliciously killed Arthur Vega by shooting him with a gun." The case was submitted to a jury on two special issues as follows:

"SPECIAL ISSUE NO. 1: Do you find from a preponderance of the evidence that the action of Fred Grieger in shooting and killing the deceased, Arthur Vega, was wrongful?
"Answer 'Yes' or 'No.'
"If you have answered Special Issue No. 1 'Yes,' and in that event only, you will answer the following special issue:
"SPECIAL ISSUE NO. 2: What amount of money, if any, do you find from a preponderance of the evidence would, if paid now, reasonably compensate the plaintiff, Matilda Vega, for the loss of pecuniary benefits, if any, sustained by her as a result of the death of Arthur Vega?

"Answer by stating the amount of dollars, if any, and cents, if any.

"Answer: $_____."

The first special issue was answered "No," and in accordance with the court's instruction the second issue was not answered. Upon the verdict, judgment was rendered that respondent take nothing. The case was reversed and remanded by the Court of Civil Appeals. 264 S.W. 2d 498.

The charge defined the term "wrongful" as used in Special Issue No. 1 as follows:

"By the term 'wrongful,' as used in Special Issue No. 1, means the use by defendant of a greater degree of force than was reasonable and necessary under the circumstances then existing and that the defendant was not at the time acting in his own self-defense, as below explained. In this connection you are charged that if at the time of the killing the deceased or his brother by his or their acts or conduct reasonably induced the defendant to believe that deceased or his brother was about to attack him with a deadly weapon which would probably cause defendant's death or some serious bodily injury, or if by the acts of the deceased or his brother, it reasonably appeared to defendant at the time, viewed from his standpoint alone, that deceased or his brother was then about to attack him with a deadly weapon which would probably cause defendant's death or some serious bodily injury, and if same was reasonably calculated to create in the mind of defendant, and did create in his mind, a reasonable expectation or fear of death or some serious bodily injury, and that defendant then and there, moved and actuated by such reasonable expectation or fear of death or serious bodily injury, shot and killed deceased, Arthur Vega, then under such circumstances the killing would be in his lawful self-defense and would not be 'wrongful.' It is not essential to the right of self-defense that real danger should exist. If from defendant's standpoint, and his standpoint alone, taking into consideration all the facts and circumstances surrounding the parties, it reasonably appeared to him that he was in danger of death or serious bodily injury, under the law he had the right to defend against such apparent danger to the same extent as if the danger were real, and if he shot and killed the deceased under such circumstances, the killing would not be 'wrongful.' "

The point upon which the case was reversed by the Court of Civil Appeals was that the trial court erred in submitting the

damage issue—Special Issue No. 2—conditionally. The rule is well grounded in our practice that it is error to submit a special issue conditionally when the effect of such submission is to inform the jury as to the judgment which will be rendered as a result of the verdict. In order for a conditional submission to be erroneous it must "inform" the jury of that which it would not know but for such conditional submission. The spirit of our practice of submitting cases on special issues would be violated if jurors were informed either by the court or by counsel of the effect of their answers, but where the effect is so obvious that any juror with ordinary intelligence would know its effect, neither the letter nor the spirit of the rule is violated by a charge which assumes such knowledge. The sole question for decision was whether or not petitioner wrongfully killed respondent's son. No juror would have been of the opinion that petitioner was liable in damages to respondent if his act was not wrongful. Any juror of ordinary intelligence would have known the legal effect of the answer to Special Issue No. 1. The conditional submission of Special Issue No. 2 did not inform the jury of its legal effect, and, therefore, should not cause a reversal of the trial court's judgment. McFaddin v. Hebert, 118 Texas 314, 15 S.W. 2d 213; Finck Cigar Co. v. Campbell, 134 Texas 250, 133 S.W. 2d 759; Lloyds Casualty Company of New York v. Grilliett, 64 S.W. 2d 1005, error refused; Mills v. Kellahin, 91 S.W. 2d 1097, writ dismissed; Burrow v. Davis, 226 S.W. 2d 199, Ref. N.R.E.; Dallas Railway and Terminal Co. v. Baughman, 243 S.W. 2d 233.

Respondent places reliance upon Grasso v. Cannon Ball Motor Freight Lines, 125 Texas 154, 81 S.W. 2d 482. That case is distinguishable from the instant one. There the charge of the court informed the jury of the effect of all its answers to issues of both primary negligence and contributory negligence. The opinion recognized that it is not always reversible error to instruct a jury to the effect that affirmative or negative answers to certain questions would relieve them of the duty of answering certain other questions, but held that it was reversible error when the jury was informed of the result of all of its answers in a case wherein there were issues of both primary negligence and contributory negligence. Continental Oil Co. v. Barnes, 97 S.W. 2d 494, error refused, is also relied upon by respondent in support of the judgment of the Court of Civil Appeals. That case is likewise clearly distinguishable from the instant one.

The position of respondent here is: "Thou shalt not submit the damage issue conditionally." We cannot unqualifiedly accept

that as a rule of decision. It would be the better practice to submit the damage issue unconditionally, but when, in a case like the instant one, the conditional submission conveys no information to the jury, the case should not be reversed on that account.

■ Having determined that the Court of Civil Appeals erred in sustaining the point of error made the ground of its judgment reversing the case, it becomes our duty to consider the briefs filed by respondent in that court, for the purpose of determining whether its judgment may be affirmed upon some other ground. The first point brought forward to the Court of Civil Appeals was that Special Issue No. 1 was multifarious, since in order to answer said issue the jury was required to determine by a single answer, both whether petitioner at the time he killed respondent's son was acting in self-defense and whether petitioner used more force than was necessary under the circumstances, and by other points complaint was made of the refusal of the trial court to submit certain special issues requested by respondent. One such issue inquired whether or not at the time Arthur Vega was killed he was making an assault upon petitioner; another whether the assault was of such a nature as to produce in petitioner a reasonable expectation of death or serious bodily injury; another whether petitioner used more force than was necessary in his self-defense; and another whether petitioner had at his disposal other reasonable means of repelling the attack then being made upon him, if any. These points together present the contention that self-defense should not be submitted in one issue, but should be broken down into its several elements, and each separately submitted. We cannot sustain that contention. The charge is in practically the identical language of the charge approved in Barrow v. Barclay, 269 S.W. 235, writ refused. In McMurrey Corporation v. Yawn, 143 S.W. 2d 664, 655, 666, writ refused, a case like the instant one, the court charged the jury as follows: "You are charged that by the term 'wrongful' as used in Special Issue No. 1, means the use of a greater degree of force than was reasonable and necessary under the circumstances then existing." The case was reversed by the Court of Civil Appeals because there was not included in the definition of "wrongful" the instruction that it was not essential to the right of self-defense that a real danger should exist—that a party has the right to defend against apparent danger to the same extent as to real danger. The opinion cited as authority for the holding Barrow v. Barclay, supra. Considering the two cases together, the conclusion is that all elements of the right of self-defense raised by the evidence should be included in one instruction and

submitted in one issue inquiring whether the killing was wrongful.

■ The method employed by the trial court of grouping several elements of an ultimate issue into one special issue is to be commended. The ultimate issue in this case was whether or not the killing was wrongful. The instruction was placed in the charge for the purpose of enabling the jury to answer that particular question, and it was not error for the court to decline to break down that instruction and submit the elements of self-defense in the special issues requested. City of Houston v. Lurie, 148 Texas 391, 224 S.W. 2d 871; 14 A. L. R. 2d 61; Howell v. Howell, 147 Texas 14, 210 S.W. 2d 978; Hough v. Grapotte, 127 Texas 144, 90 S.W. 2d 1090. The Court of Civil Appeals construed our recent opinion in Roosth & Genecov Production Co. v. White, 152 Texas 619, 262 S.W. 2d 99, as condemning the method of submission employed by the trial court in this case. We respectfully point out that that court misconstrued our holding. Our opinion in that case commends rather than condemns this manner of submission. The points are overruled.

■ Another point presented to the Court of Civil Appeals was that the trial court erred in that portion of its charge wherein it informed the jury, in effect, that petitioner had the right to kill respondent's son, Arthur Vega, if, at the time of the killing, either that son or his brother was making an attack upon him, or if he reasonably believed that either of them was about to make an attack upon him. On its face that charge seems to present error. It would hardly be contended that the fear of an attack by one party would justify the killing of that party's brother. Inorder to justify such a charge the record must affirmatively disclose that the two brothers were acting in concert. The evidence which came from respondent's own witnesses establishes these facts: Petitioner was a police officer in the city of Taylor. In the discharge of his duties he met the Vega brothers on a street in Taylor about eight o'clock at night. They were accompanied by Willie Olivarez. The Vega brothers were drunk and staggering. Petitioner requested Olivarez, who was not drunk, to take the Vega brothers off the street. Some words ensued, and then Arthur Vega attacked petitioner and threw him to the ground. Both he and his brother jumped upon petitioner and held him with his back to the ground. In that situation, petitioner called upon Olivarez for help, and Olivarez pulled one of the brothers off petitioner. Then petitioner was able to free himself from the other one, and got back on his feet. He then commanded the two brothers to sit down next to a wall.

They squatted down with their backs to the wall while petitioner, with his pistol in his hand, held guard over them. Petitioner directed a passer-by to telephone the police department for help, but shortly thereafter both brothers arose and advanced toward petitioner, whereupon he killed both of them. Those undisputed facts establish that the two brothers acted in concert, which justified the giving of the portion of the charge complained of.

■ Another point brought to the Court of Civil Appeals was that Special Issue No. 1 incorrectly placed upon respondent the burden of proving that in killing the deceased petitioner was not acting in self-defense. That presents the most difficult question in the case. The sole right of respondent to recover damages is derived from the statute, Article 4671. That right did not exist at common law. The statute gives such a right when death "is caused by the wrongful act, neglect, carelessness, unskillfulness or default of another." It will be observed that "wrongful act" is placed in the same category as the other grounds giving rise to a cause of action, from which it follows that the burden placed upon plaintiff to prove the death was caused by a "wrongful act" is the same as that for death by negligence or any of the other grounds named. So far as our investigation discloses, all authorities seem to agree that the burden is upon plaintiff to prove that the killing was wrongful. If he proves an intentional killing, and nothing more, he has met that burden, and if the defendant offers no evidence raising the issue of self-defense, the plaintiff is entitled to a judgment. This for the reason that an intentional killing unexplained is presumed to be wrongful. When, however, in the example just above mentioned, the defendant pleads self-defense in justification of the killing and offers evidence supporting that plea, the authorities are in conflict on the question of placing the burden of proof on the issue of self-defense. Some of the cases adopting the view that the burden rests upon the defendant to prove justification seem not to distinguish between burden of proof and necessity of going forward with the evidence. They proceed upon the theory that the burden of proof shifts during the trial of a case. In this jurisdiction it is held that the burden of proof never shifts from one party to the other at any time during the trial. Clark v. Hills, 67 Texas 141, 2 S.W. 356; Boswell v. Pannell, 107 Texas 433, 180 S.W. 593; Walker v. Money, 132 Texas 132, 120 S.W. 2d 428; 17 Texas Jur. 324, § 98.

In Kuykendall v. Edmondson, 208 Ala. 553, 94 So. 546, it was held that after the defendant admitted an intent to kill he had the burden of going forward with the evidence, and that

when reasonable justification was shown, the burden of proof shifted back to the plaintiff. That same reasoning was employed in Welch v. Creech, 88 Wash. 429, 153 Pac. 355, 358; L. R. A. 1918A, 353, from which we quote:

"Where the killing is proved or admitted, a prima facie case is made out, and, when the killing is reasonably accounted for, the burden is met and shifts back to the plaintiff, where it belongs in all civil actions.

\* \* \*

"A great deal has been said about the burden of proof, but a primary rule in all cases is that the one who has the affirmative of an issue must sustain it by competent proof. If that burden is sustained, either by fact or presumption of law, it is incumbent upon the defendant to balance the weight of evidence. If he does, there can be no recovery; for the plaintiff has not sustained his case by a preponderance of the evidence."

■ We agree with the conclusions in those cases, but not upon the ground that the burden of proof shifts from one party to another during the trial. It remains throughout on the plaintiff. When defendant's evidence raises an issue of justification, the presumption that the killing was wrongful is balanced, and the matter is set at large. The plaintiff can then no longer rely alone upon the presumption, but must prove the wrong by a preponderance of the evidence.

The above line of reasoning is not accepted in some jurisdictions, but we are referred to no case, and have discovered none, which would relieve the plaintiff of the burden of proof under the facts in this case. It is held in Nichols v. Winfrey, 79 Mo. 544:

"Where the plaintiff himself has put in evidence the incidents of an occurrence from which the jury within their province, might draw exculpatory inferences favorable to the defendant, it is error for the court to so instruct the jury as to convey a suggestion that the defendant must by an additional weight of evidence exonerate himself."

One of the leading cases holding that the burden of proving self-defense rests upon the defendant is Tucker v. State, 89 Md. 471, 43 Atl. 778, 782, 44 Atl. 1004, 46 L. A. R. 181. The opinion in that case makes this very significant observation with respect to Nichols v. Winfrey, supra:

"In that case the decision was largely based on the form of the pleadings, but it is easily distinguishable from this, when we see from the opinion 'that the facts on which the defendant could base his claim of self-defense were mainly disclosed by the plaintiff in developing her own case. They were so inseparably interwoven in the circumstances and incidents of the homicide as not only to constitute part of the *resgestae,* but were included within the plaintiff's proofs descriptive of the offense itself.' As we have seen, there was absolutely nothing in the plaintiff's testimony to show any justification, and the defense set up by the defendant himself was a new, affirmative fact—that he did not intend to shoot Johnson, and shot to frighten him because he believed Reynolds was in danger, etc."

That distinction is recognized in 16 Amer. Jur., Death, § 309, where it is stated "The rule generally is that when the plaintiff's own evidence shows no justification, the burden of proof of justification or excuse for an intentional act causing death is upon the defendant." The rule followed in Nichols v. Winfrey, supra, which was impliedly approved in Tucker v. State, and in the quotation from American Jurisprudence, was early recognized in Texas. We quote from March v. Walker, 48 Texas 372, 377:

"But in this, as in every other case, it developed on the plaintiff to establish his case, viz., that the killing was wrongful. If the evidence failed to show a wrongful killing, but, whilst establishing the act of killing, developed that it was done in the justifiable exercise of the right of self-defense, it is scarcely necessary to say that the verdict was wrong."

In establishing her case the respondent's witnesses testified to facts regarding the killing, from which facts the jury might well have based a finding of justification. Had the case been closed when she rested, this situation would have been presented: Petitioner intentionally killed respondent's son; such killing may have been wrongful, but, on the other hand, it may have been justified. The burden surely did not rest upon petitioner to prove that it was not wrongful, but was upon the respondent to prove that it was wrongful.

■ Much of the opinion of the Court of Civil Appeals is given to a discussion of the question that the court's charge was a general charge not permissible in cases submitted on special issues. No objection was made to the charge on that ground and there is, therefore, no necessity for discussing that question in this opinion.

The judgment of the Court of Civil Appeals is reversed and that of the trial court is affirmed.

Opinion delivered July 14, 1954.

MR. JUSTICE GRIFFIN dissenting.

I agree with the majority opinion in the above cause except insofar as it holds that the burden to prove that the killing was not committed by the petitioner (who was defendant in the trial court) in his own self-defense was upon the respondent (who was plaintiff below). This holding is based upon the fact that the plaintiff must establish that the killing was "wrongful." I agree that the burden was upon plaintiff to make out her case. This she did when she proved that the defendant intentionally shot the deceased, and that deceased died as a result of such wound.

The majority opinion says: "If he (plaintiff) proves an intentional killing, and nothing more, he has met that burden, and if the defendant offers no evidence raising the issue of self-defense, the plaintiff is entitled to a judgment. This for the reason that an intentional killing unexplained is presumed to be wrongful. When, however, in the example just above mentioned, the defendant pleads self-defense in justification of the killing and offers evidence supporting that plea, the authorities are in conflict on the question of placing the burden of proof on the issue of self-defense." The opinion then proceeds to hold that since the evidence raising the issue of self-defense was developed by plaintiff as a part of her main case, the burden of proof on self-defense thereupon was upon the plaintiff.

The burden of proof (persuasion) is determined before the introduction of evidence begins, and never shifts. It is not changed by the evidence. Walker v. Money, 132 Texas 132, 120 S.W. 2d 428.

If the burden of proof is upon a plaintiff in a suit such as we have here, it must be a universal rule of law. The burden of proof cannot, with any justice, be upon a plaintiff to disprove self-defense in one case, but upon the defendant to establish self-defense in another. It cannot depend upon the proof offered in a particular case. The plea of self-defense is a plea in the nature of confession and avoidance. It admits the killing, but seeks to avoid the legal effect thereof by justification thereof.

Rule 94, T. R. C. P. provides, in part: "In pleading to a preceding pleading, a party shall set forth affirmatively * * * and any other matter constituting *an avoidance or affirmative* defense * * *." (Emphasis added) Under this rule it is held that unless affirmative defenses are specifically pleaded, it is not error to refuse to submit an issue on them. City of Coleman v. Smith, Texas Com. App., (1943), 168 S.W. 2d 936, refused.

While the testimony of plaintiff herein showed an attack upon petitioner just prior to the killing, the attack was not made with a deadly weapon, and such attack was not sufficient to justify or excuse the homicide and to raise the issue of self-defense *unless* it caused the defendant to have a reasonable ground to fear death or serious bodily injury at the hands of the attackers. Whether or not the attack raised such an apprehension in the mind of defendant was a defensive issue. He had no right to kill to repel the attack under any other circumstances. The plaintiff's evidence most certainly did not establish these grounds, as a matter of law, and, at most, only served to raise the issue of self-defense. Raising the issue does not relieve defendant of the burden of establishing such grounds of justification or excuse for killing.

It is settled by our decisions that, with the exception of the rule of evidence which gives a person accused of a crime the benefit of a reasonable doubt, the law of self-defense is the same in both civil and criminal cases. March v. Walker, 48 Texas 372, 4 Texas Jur. 984, et seq., and authorities there cited. Fambrough v. Wagley, 140 Texas 577, 169 S.W. 2d 478.

It is also well settled that it is always unlawful for one person to intentionally kill another, unless such killing is justified or excused under the law. Self-defense is a justification for a killing, provided the person who does the killing is in fear of death or serious bodily injury at the hands of the deceased at the time of the killing. Mosley v. State, 149 Texas Crim. Rep. 523, 196 S.W. 2d 822; Brown v. State, 153 Texas Crim. Rep. 1, 216 S.W. 2d 226.

Article 1256, Penal Code, State of Texas, Ann., provides: "Whoever shall voluntarily kill any person within this State shall be guilty of murder. Murder shall be distinguished from every other species of homicide by the absence of circumstances which reduce the offense to negligent homicide or which excuse or justify the killing." So far as I have been able to find there is no case prior to the majority opinion herein, which holds that,

as a necessary part of the plaintiff's case, the evidence on the part of the plaintiff must negative the existence of self-defense. A prima facie case is made out by plaintiff by showing an intentional killing. To escape liability under self-defense, the evidence must establish that the act was done by defendant while in fear of death or serious bodily injury at the hands of the deceased. Croft v. Smith, Texas Civ. App., (1899), 51 S.W. 1089, no writ history. This case has been cited and approved many times without question. In civil suits involving homicide, "the general rule is that self-defense is an affirmative defense for the defendant to prove." 17 A. L. R. 2d 601, and authorities therein cited.

Self-defense is not an issue evidentiary of a wrongful killing, but is an ultimate defense to liability. Such being the case, the burden of proof is not upon a plaintiff, but upon a defendant who is the one relying upon such defense. I believe in order to escape liability by virtue of such plea, the defendant must secure a finding favorable to him.

In the present case, the evidence does not show an attack upon defendant by either deceased or his brother with a deadly weapon. Therefore, it was for the jury to determine whether or not the self-defense plea was established to an extent to justify the killing. However, reprehensible as it may have been that deceased and his brother were drunk in a public place, the law does not provide death as a punishment for such offense. Neither does the law permit a killing to repel a threatened attack, except to prevent the infliction of injuries which may result in death or serious bodily injuries. Burns v. State, 157 Texas Crim. Rep., 183 (1954), 262 S.W. 2d 406.

The majority holding cannot be justified upon the ground that the action for wrongul death is given by the same statute that gives an action for death by negligence, etc. Croft v. Smith, Texas Civ. App., (1899), 51 S.W. 1089.

An illustration which quickly and clearly shows the difference between a negligent killing and a wrongful killing by shooting would be to consider a cause wherein the plaintiff sues the defendant for death due to an automobile collision. The plaintiff does not make a case by showing merely the collision between deceased's automobile and defendant's automobile, and the resulting death of deceased. He must do more. In a wrongful killing case, the plaintiff does make a prima facie case by showing that defendant intentionally and willfully shot deceased, and deceased died therefrom. Of course, each would have to show damages

sufered; but as to the main act the above illustrates the difference.

I think this case as to self-defense is ruled by Cameron Compress Co. v. Kubecka, Texas Civ. App., 283 S.W. 285, refused; and Sumner v. Kinney, Texas Civ. App., 136 S.W. 1192, no writ history. I also believe self-defense should be submitted by a separate special issue properly placing the burden of proof upon the one seeking to escape liability thereunder.

Human life is a very precious and dear thing, and the policy of our laws is to protect it. Our laws require that one who intentionally kills another must be punished unless he can excuse or justify the act. I think this rule of law is a very salutary one. I can never agree to a rule of law which will say to one who intentionally kills another, 'You go free from civil liability unless the one seeking to hold you can show you did not act in fear of death or serious bodily injury at the time you took away what you cannot return—the life of your victim."

For the error in wrongfully placing the burden of proof upon the issue of self-defense, I would reverse and remand this cause for further proceedings.

Opinion delivered July 14, 1954.

Rehearing overruled October 13, 1954.