Elizabeth Bush ROBERTS et al.

v.

Gaye Hailey BUSH.

No. 7131.

Court of Civil Appeals of Texas.

Amarillo.

Nov. 20, 1961.

Rehearing Denied Jan. 3, 1962.

Baker, Jordan, Davey & Shaw, Dallas, T. D. Wells, Paris, Harvey L. Davis, Dallas, for appellants.

Abernathy & Orr, R. R. Hendricks, McKinney, for appellee.

NORTHCUTT, Justice.

This is a suit brought in the District Court of Collin County by Mrs. Elizabeth Bush Roberts and Mrs. Lubelle Bush Byrd, as plaintiffs, (joined by their respective husbands) against Gaye Hailey Bush, as defendant, to set aside a will admitted to probate by the County Court of Collin County, Texas. The plaintiffs were the daughters of W. N. (Bill) Bush and Mrs. Roberta Bush. W. N. (Bill) Bush and Mrs. Roberta Bush were married in 1905 and divorced in 1949. W. N. (Bill) Bush and this defendant were married in 1951. It was the contention of the plaintiffs that the execution of the will here involved was procured by undue influence on the part of the defendant and that W. N. (Bill) Bush, the deceased, did not have testamentary capacity at the time he executed this will. The jury found that Bush did have testamentary capacity at the time of the execution of the will, and that the execution of the instrument was not procured by undue influence on the part of Gaye

Hailey Bush. Judgment on the jury verdict was rendered for the defendant and the plaintiffs perfected their appeal to the Court of Civil Appeals in Dallas County, Texas and transferred to this court by order of the Supreme Court of Texas. The parties will hereinafter be referred to as plaintiff and defendant as they were in the Trial Court.

By plaintiffs' first two points of error it is contended the court erred in applying the "Dead Man's Statute", Art. 3716 Vernon's Ann.Civ. Texas Statutes to prevent the jury from hearing certain evidence of the plaintiffs. The defendant testified that the plaintiffs took their mother's side during the hearings in the divorce proceedings between their father and mother; that the daughters never visited their father since she had known him; that she knew of, and that they certainly didn't visit their father after she and Mr. Bush were married; that they never sent him a Father's Day card, Birthday card, or Christmas card and said; "I think they'll tell you that I am telling the truth." Then she testified that they did not visit him in the hospital. Defendant was asked if she had the book that was signed by the visitors at the funeral and if either of the plaintiff's names were in the book and she stated, "No", but, "that Lubelle had sent flowers."

■ The plaintiffs attempted to show that Mrs. Lubelle Byrd did not attend her father's funeral out of respect to him because there would have been a scene with Gaye Hailey Bush. The court sustained the objections to the testimony on the theory that it was in violation of Art. 3716. Plaintiffs attempted to show by Elizabeth Bush Roberts, daughter of W. N. (Bill) Bush, that she was not permitted to see her father while he was in the hospital and she would have gone to see him if she could have. The court sustained an objection to this testimony upon the theory that it also was in violation of Art. 3716. We think when it was shown by the defendant that the daughters did not visit their father while he was in the hospital with a cancerous condition and did not attend his funeral they should have been permitted to show why they did not. The daughters appeared on the witness stand but were not permitted to show why they did not visit him in the hospital or attend his funeral. The jury did not know why the plaintiffs did not in any manner offer any excuse for such failure. Those facts would have a great bearing upon the decision of the jury, and would be of great damage to the plaintiffs and cause the jury to wonder why the daughters did not care enough for their father to go see him or attend his funeral.

■ The test as to whether Art. 3716 would have prevented these plaintiffs from testifying as to why they did not visit their father in the hospital and did not attend his funeral, is; If the witnesses offered such testimony falsely, could Mr. Bush, the deceased father, if living, controvert it of his own personal knowledge. If the deceased could so controvert such facts constituting the transaction, then the introduction of such evidence would be barred by Art. 3716. We are unable to see where any of this testimony concerns a transaction with deceased or could be denied by the deceased if living. If living there would have been no funeral. No attempt was made to show Mr. Bush refused to permit either of his daughters from visiting him at the hospital, and if any one else prohibited them from visiting him in the hospital, all deceased, if living, could testify to would be hearsay. Dakoff et al. v. National Bank of Commerce, Tex.Civ.App., 254 S.W.2d 550, writ dismissed, and the cases there cited; Rothman v. Gillett et al., Tex.Civ.App., 315 S.W.2d 956, writ refused, N.R.E.

Plaintiffs' 9th point of error is as follows:

"The Trial Court erred in instructing the Jury that a person who has testamentary capacity and who is not unduly influenced may dispose of his property at will as he so desires be-

cause it informed the Jury of the legal effect of their answers, and amounted to a comment on the weight of the evidence."

In the court's charges, and in this order, the court submitted the case to the jury in the following manner:

"5. You are instructed that a person who has testamentary capacity and who is not unduly influenced may dispose of his property by will as he so desires. Now, bearing in mind the foregoing instructions and definitions, you will answer the following Special Issues, to wit:

"Special Issue No. 1:

"Do you find from a preponderance of the evidence that W. N. Bush did not have testamentary capacity (as defined and explained herein) at the time of the execution of the instrument offered herein as his will?

"Answer, either, 'He did not then have testamentary capacity' or 'He did then have testamentary capacity.'

"Answer: *He did then have testamentary capacity.*

"If you have answered the preceding issue 'He did then have testamentary capacity' then answer the following issue; otherwise, do not answer it.

"Special Issue No. 2:

"Do you find from a preponderance of the evidence that the making and execution of the instrument, here offered as W. N. Bush's last will, was procured by undue influence (as defined and explained herein) on the part of Gaye Hailey Bush?

"Answer: 'It was' or 'It was not'.

"Answer: *It was not."*

■ We cannot see any reason for the court telling the jury that a person who has testamentary capacity and who is not unduly influenced may dispose of his property by will as he so desires. The issues to be determined by the jury were if Mr. Bush had testamentary capacity and whether he was unduly influenced by the acts of Gaye Hailey Bush to make the will in question. We think this instruction was a comment upon the weight of the evidence and told the jury not only the effect of their answers but instructed the jury in substance that if they answered either issue Number 1, that he did not have testamentary capacity, or issue Number 2, that the will was procured by undue influence that the jury would be finding for the plaintiffs; but on the other hand if they wanted to find for the defendant, to find Bush had testamentary capacity and also was not unduly influenced.

■ The duty of a trial court under Rule 277, Texas Rules of Civil Procedure, in submitting special issues is to submit such explanatory instructions and definitions of legal terms as shall be necessary to enable the jury to properly pass upon and render a verdict on such issues. The Court had instructed the jury as to the terms testamentary capacity and undue influence, and those two matters were all the jury were asked about and should have been interested in. Instruction 5 above mentioned was not necessary to enable the jury to in any manner pass upon the testamentary capacity of the deceased or whether he was unduly influenced. It is almost saying to the jury that the court thought the jury should find that Mr. Bush had testamentary capacity and was not unduly influenced and had properly disposed of his property as he saw fit. Speaking of Rule 277, the Supreme Court in the case of Boaz v. White's Auto Stores et al., 141 Tex. 366, 172 S.W.2d 481, 484, stated:

"Clearly the rule affords a greater latitude to the trial judge than did the statute, and instructions are now permissible which formerly would have been condemned. However, the rule does not authorize the giving of an in-

struction which is not 'necessary to enable the jury to properly pass upon and render a verdict on such issues'; and which is calculated to prejudice one of the parties before the jury. As stated by Mr. J. D. Dooley, of the Amarillo Bar, in an article appearing in Vol. 20 of Texas Law Review on page 36, in discussing the language of the rule above quoted:

" * * * This clause will permit explanatory instructions, even in the nature of general charges, whenever there is good need for same to properly aid the jury. In my opinion, however, this does not license an unlimited use of general charges in a special issue case."

In the case of Dial Temp Air Conditioning Company v. Faulhaber, Tex.Civ.App., 340 S.W.2d 82, 89, Writ refused N. R. E., and quoting the Boaz Case, stated:

"Rule 272 T.R.C.P. authorizes the trial court to instruct the jury as to the law arising on the facts, but it forbids the court to comment on the weight of the evidence. Rule 277 does not authorize the giving of an instruction which is not necessary to enable the jury properly to pass upon the fact issue submitted, and which is calculated to prejudice one of the parties before the jury. Boaz v. White's Auto Stores, et al., 141 Tex. 366, 172 S.W.2d 481. Further, the theory of our special issue practice, whether good or bad, is to have the jury pass on disputed fact issues without regard to the effect of their answers on the judgment to be rendered. McDonald, Texas Civil Practice, Secs. 12.02 (page 1050) and 12.04."

From what has been said, we are of the opinion the trial court correctly sustained defendant's exceptions to the testimony of Mrs. Roberts and Mrs. Byrd as to matters concerning which their father could have denied if he had been living, and accordingly overrule appellant's points of error num-

bered three, four, five, six, seven and eight. However, we think they could testify as to why they did not visit their father during his last sickness since that transaction was not with the father but with the doctor. We also believe from this record they could testify why they did not attend the funeral of their father because defendant's testimony was such as would certainly have been calculated to prejudice the jury against the daughters for failure to show such respect to their father.

We sustain appellant's points of error numbers one, two and nine. The judgment of the trial court is therefore reversed and remanded for another trial.

DENTON, Chief Justice (dissenting).

I respectfully dissent. I have no particular disagreement with the test to be applied under Article 3716 which was followed by the majority opinion, but I am convinced the test has been misapplied. In my opinion the trial court correctly ruled that the testimony offered by the two appellants was inadmissible under Art. 3716. Both were parties to this suit seeking to set aside the will of their deceased father. It was their purpose to establish that their father lacked testamentary capacity, and that his will was procured by undue influence on the part of appellee.

According to the statement of facts, Mrs. Roberts was not allowed to testify in response to three questions propounded by her attorney: (1) to tell the relationship that existed between the deceased and his granddaughter; (2) whether or not deceased was a heavy drinker; (3) whether deceased was a good father and husband. Mrs. Roberts' sister, Lubelle Bush Byrd, also a party hereto, was not permitted to testify concerning a visit by deceased to Mrs. Byrd's home in Port Arthur. Appellee's objections to this testimony offered was sustained on the ground that it violated Art. 3716. In my opinion all of this testimony constituted transactions with the decedent within the meaning of the statute.

Under the circumstances here, the trial court correctly excluded such testimony. Holland v. Nimitz, 111 Tex. 419, 232 S.W. 298, 299 (opinion adopted). The Commission of Appeals in Holland v. Nimitz, supra, discussed the statute as follows:

> "The object of the statute was to prohibit the interested heirs and legal representatives from testifying to any facts, or opinions, based upon observations, arising out of any transaction with the decedent which the decedent could, if living, contradict or explain. Death having sealed the lips of one of the parties, the law, for reasons founded upon public policy, seals the lips of the other."

In developing their bills of exception after the above proposed testimony was excluded, both witnesses proceeded to testify to other matters such as why they did not visit their father during his last illness; their failure to attend his funeral; and their failure to send him Christmas and Birthday cards. Although this testimony was offered only during the time the bills of exception were perfected, it was simply a case of the witness justifying or explaining transactions with the deceased, and would not be subjects that could be testified to under the circumstances here. It is to be noted that the trial court instructed the jury in its charge relative to the law pertaining to interested parties testifying to any transactions or conversations with a deceased person. Jurors are presumed to follow the court's instructions. This instruction properly explained the absence of testimony by the appellants pertaining to these matters.

Appellants further complain of the action of the trial court in sustaining certain special exceptions to their pleadings. One allegation which was stricken was one which asserted the estate of the deceased consisted almost entirely of separate property received by him by gift or devise. Even though the pleading was stricken, appellants did offer evidence which established the fact that the land in controversy had been in deceased's family for many years. Appellants are not now in a position to complain of the trial court's action in sustaining the pleadings referred to when this evidence was before the jury.

Appellants further complain of the trial court's action in sustaining special exceptions concerning allegations of previous marriages of appellee, and the contention her marriage just prior to the one to the deceased was void. I fail to see how these matters are material to the ultimate issues to be decided in the instant case. In addition, these matters were not before the county court in the original probate proceeding. It is well settled that on an appeal from the probate court to the district court only such issues as were presented in the probate court can be determined by the district court. Magee v. Magee, (Tex.Civ. App.) 272 S.W. 252 (writ dismissed); In the Matter of the Estate of Martin, Deceased (Tex.Civ.App.) 284 S.W.2d 279 (refused n. r. e.). The contention that appellee's marriage to one W. W. Spears was void is a collateral attack on that judgment. We find nothing in this record to support such an attack.

I also disagree with the majority opinion in its holding that the trial court's instruction complained of constituted reversible error. The instruction was a correct statement of the law. Even though it may have been better practice to have eliminated the instruction, I do not think it can be said that appellants were prejudiced thereby. It does not seem that the instruction would have informed the jury of the effect of their answers. As stated by Chief Justice Hickman in Grieger v. Vega, 153 Tex. 498, 271 S.W.2d 85, 87:

> "The spirit of our practice of submitting cases on special issues would be violated if jurors were informed either by the court or by counsel of the effect of their answers, but where the effect is so obvious that any juror with ordinary intelligence would know its effect,

neither the letter nor the spirit of the rule is violated by a charge which assumes such knowledge."

No juror would have been of the opinion that a person could dispose of his property by will without having the testamentary capacity to do so, and by one who was unduly influenced. See also Finck Cigar Co. v. Campbell, 134 Tex. 250, 133 S.W.2d 759; Lloyds Casualty Co. of New York v. Grilliett (Tex.Civ.App.) 64 S.W.2d 1005 (error refused). In my opinion the instruction given should not cause a reversal of the trial court's judgment.

I would therefore affirm the judgment of the trial court.