**A. J. HOLMES, Appellant,**

v.

**Emerson HOLMES, Appellee.**

No. 8183.

Court of Civil Appeals of Texas, Beaumont.

Oct. 4, 1979.

B. F. Whitworth, Jr., Jasper, for appellant.

March H. Coffield, Jasper, for appellee.

DIES, Chief Justice.

Two brothers, A. J. ("Cracky Lee") and Emerson Holmes, had trouble over jointly owned "heired" land and timber cutting, and Cracky Lee shot Emerson several times. Emerson, as plaintiff below, sued Cracky Lee, defendant below, in the District Court of Newton County and, after a jury trial, received a judgment against Cracky Lee for $10,000, from which the latter brings this review.

The jury found that Crackey Lee intentionally shot his brother, plaintiff. Defendant, Cracky Lee, insists the court below should have defined "intentional" even though there is no contention the shooting was accidental.

■ Tex.R.Civ.P. 277 requires ". . . the court shall submit such explanatory instructions and definitions as shall be proper to enable the jury to render a verdict . . . ." No definition is required for a commonly used term. G. Hodges, *Special Issue Submission in Texas* § 13 at 37 (1959). See *Pritchett v. Highway Insurance Underwriters*, 158 Tex. 116, 309 S.W.2d 46, 49 (1958); *Union Oil Company of California v. Richard*, 536 S.W.2d 955 (Tex.Civ.App.—Beaumont 1975, writ ref'd n. r. e.); *Gulf Insurance Co. v. Vela*, 361 S.W.2d 904 (Tex. Civ.App.—Austin 1962, writ ref'd n. r. e.).

■ Recently the Texas Supreme Court has noted that the term "unreasonably dangerous" in a products liability case need not require a definition. *Turner v. General Motors Corp.*, Tex., 584 S.W.2d 844 (1979).

We feel "intentional" is a common term, and its definition is unnecessary to enable the jury to reach a verdict. This point is overruled.

Cracky Lee also insists the trial court's definition of "self defense" was erroneous or at least incomplete. Herewith follows the trial court's definition:

" . . . a person acts in 'self defense' when he uses violence to resist violence proffered to him or where the person assaulted does or attempts to do an act which places the person of the one charged with assault in jeopardy, or which reasonably creates the belief in the mind of the assaulting party that he is in danger. In order to avail himself of the right of self-defense, the person charged with assault must not only honestly believe himself to be in immediate danger, but have reasonable grounds for such belief; and, in resisting force with force, he must use only that degree of force which is reasonably necessary to repel a threatened violence."

Cracky Lee wants the jury informed the danger may be apparent viewed from his standpoint; and that he was not bound to retreat to avoid killing Emerson.

■ It is true that self defense in Texas is the same in civil as well as criminal cases with this important exception. The burden of proof in a criminal case is "beyond a reasonable doubt"; while in a civil case it is by a "preponderance of the evidence." See *Rhoden v. Booth*, 344 S.W.2d 481, 485 (Tex.Civ.App.—Dallas 1961, writ ref'd n. r. e.). The definition given by the court in the instant case fairly informs the jury that Cracky Lee's belief of danger, if reasonable, was sufficient, and we think it is a sufficient definition particularly in a civil suit. Under the facts of this case, we see no necessity to inform the jury Cracky Lee was not bound to retreat to avoid the

necessity of killing Emerson. Cracky Lee took the position he was on a crutch and couldn't retreat. The undisputed evidence here shows that Emerson, not Cracky Lee, was in retreat and was shot from behind. These points are overruled.

Cracky Lee next contends the jury's answers to Special Issues Nos. 1 and 3 were against the great weight and preponderance of the evidence. This directs us to all the evidence. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661 (1951).

In Special Issue No. 1, the jury found that Cracky Lee shot his brother intentionally, and in Special Issue No. 3 they failed to find he was acting in self defense.

We have carefully read this entire record, and, while of course we recognize Cracky Lee made these contentions to the jury, suffice it to say that the jury's answers are supported by abundant probative evidence. These points are overruled.

Finally Cracky Lee complains that the trial court allowed Emerson's sister, Mrs. Margaret Tukes, to testify after having been put under the Rule (*Tex.R.Civ.P. 267*), when she was shown to have remained in the courtroom. Where the rule is breached, the court may determine whether or not to permit the witness to testify, and the court's ruling will not be upset unless there is a showing of manifest abuse. *Triton Oil & Gas Corp. v. Moran Drilling Co.*, 509 S.W.2d 678, 685 (Tex.Civ.App.—Fort Worth 1974, writ ref'd n. r. e.). See 3 McDonald, *Texas Civil Practice* § 11.17.3 at 186 (1970). No such showing is made here.

All of appellant's points are overruled, and the judgment of the trial court is affirmed.

AFFIRMED.

KEITH, Justice, concurring.

While I join in the affirmation of the judgment of the trial court, I do not agree completely with the rationale of the opinion affirming the case. At the outset, it appears to me that the case was not properly submitted to the jury. The inquiry in Special Issue No. one, upon which liability was imposed, submitted "intentional" wounding of the plaintiff. I submit that this was not an ultimate issue in the case.

The charge set out in *Grieger v. Vega*, 153 Tex. 498, 271 S.W.2d 85, 86–87 (1954), includes the ultimate issue—was the shooting wrongful? But, we do not have a point of error raising the specific point. Instead, we have an attack upon the failure of the court to define the word "intentionally".

In essence, plaintiff's pleadings alleged that defendant had committed an aggravated assault upon him in violation of the provisions of *Tex.Penal Code Ann. §§ 22.-01(a)(1) and 22.02(a)(3) (1974).** The Legislature, having defined the offense, also gave a definition for use in connection therewith. See *Tex.Penal Code Ann. § 6.03(a) (1974)* defining culpable mental states in this language:

"A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result."

The word "intentionally", as defined in the Penal Code *and* as used in the special issue was not a "common term". On the contrary, it was and is a word of art and the jury should have been instructed as to its meaning in the language used in the Penal Code.

As Justice Cornelius pointed out in the recent case of *Hogenson v. Williams*, 542 S.W.2d 456, 458 (Tex.Civ.App.—Texarkana 1976, no writ):

---

* *Sec. 22.01(a)(1)*: "A person commits an offense if he: (1) intentionally . . . causes bodily injury to another . . . ."

*Sec. 22.02(a)(3)* defines an aggravated assault: "A person commits an offense if he

commits assault as defined in Section 22.01 of this code and he: . . . (3) uses a deadly weapon."

"An assault is an offense against the peace and dignity of the state, *and the conduct constituting an assault is that which is described in the Penal Code.* That conduct is also an invasion of private rights constituting a civil tort, but the definition of an assault is the same whether it is the subject of a criminal prosecution or a civil suit for damages." (emphasis supplied)

In *Hogenson,* supra, the court found reversible error because of the failure of the trial court to define assault "in the terms of Section 22.01" of the Penal Code. (Id.) Here, the jury was left to speculate as to the meaning of the operative word in the offense—the word "intentionally".

However, under our record, there is no question but that the defendant shot his brother voluntarily; the only question was whether or not he was justified in so doing under the doctrine of self-defense. Under these circumstances, I do not find the failure to define "intentionally" to be reversible error.

A charge on self-defense, as quoted in *Grieger v. Vega,* supra, would have afforded defendant all of the rights to which he was entitled. As noted by Justice Barrow in *Bounds v. Caudle,* 560 S.W.2d 925, 929, fn. 3 (Tex.1978):

"It is settled that the law of self-defense is the same in both civil and criminal cases. *Fambrough v. Wagley,* 140 Tex. 577, 169 S.W.2d 478 (1943)."

However, since the adoption of the new Penal Code, the charge on self-defense should be modified along the lines suggested by Judge Dally in *Sternlight v. State,* 540 S.W.2d 704, 705–706 (Tex.Cr.App.1976).

I concur in the disposition of the complaint because (a) the specific objection now under discussion was not included in the objections to the charge; and (b) the factual basis of the plea of self-defense is extremely weak, amounting to no more than the faint glimmer of evidence of a probative nature. *Seideneck v. Cal Bayreuther Associates,* 451 S.W.2d 752, 755 (Tex.1970).

With these qualifications, I concur in the affirmation of the judgment of the trial court.