James COULSON et al., Appellants,

v.

Andrew Perry CLARK, Appellee.

No. 10605.

Court of Civil Appeals of Texas.

Austin.

Nov. 26, 1958.

Rehearing Denied Dec. 17, 1958.

B. W. Smith, Sedberry & Williams, San Angelo, for appellants.

W. S. Leslie, Edd B. Keyes, San Angelo, for appellee.

ARCHER, Chief Justice.

This is a will contest, originating in the County Court of Tom Green County, Texas and duly carried to the 119th District Court of said County, where the trial was before a jury. Said District Court rendered judgment on the verdict, probating as the will of Charles Louis Coulson, deceased, the instrument offered by Andrew Perry Clark, Proponent in both courts below, and Appellee herein.

This appeal is based on thirty four points with a number of subpoints, but may be summarized to the effect that the trial court erred in overruling motion for a new trial because the verdict of the jury resulted from bias and prejudice; that jurors Buster, Shoemaker, Reynolds and Griffin were disqualified to serve as jurors for the reason that at the time each of said named jurors had a bias in favor of appellee and a prejudice against appellants; that the finding of the court that at the time of the voir dire examination of the panel said jurors did not recall having ever met C. L. Coulson, and the finding that juror Buster, before the rendition of the verdict, did not state that he had known Coulson and that Coulson was hardheaded and knew what he was doing; that the finding that juror Buster at the time he was selected as a juror had no bias in favor of proponent and no prejudice against the contestants is contrary to the great weight and preponderance of the evidence; that the finding of the court that juror Shoemaker did not know Coulson was the same person he had known and had business dealings with, and that Shoemaker did not have an opinion as to whether Coulson was a person of strong will, of sound mind, or with reference to Coulson's physical and mental condition at the time of making the will is contrary to the great weight and preponderance of the evidence; that the court's finding that when Shoemaker was selected on the jury he had no acquaintance with C. L. Coulson so as to influence him as a juror, and the finding that Shoemaker did not make a statement to the effect that Coulson was firm and knew what he was doing and appeared alert for a man of his age and not like the way he was described in the deposition and hospital record and that Shoemaker at the time he was selected as a juror had no bias in favor of proponent or prejudice against contestants is contrary to the great weight and preponderance of the evidence; that the court's finding that at the time juror Reynolds was accepted on the jury she had no fixed idea and belief as to the effect of hardening of the arteries on the mind of an aged person; that Reynolds did not state in the course of the deliberations of the jury that she knew from experience that hardening of the arteries does not affect the mind like the doctors said and that she had no bias in favor of proponent and no prejudice against contestants is contrary to the great weight and preponderance of the evidence.

That the finding that juror Griffin was accepted on the jury he had no fixed idea and belief as to the effect of hardening of the arteries on the mind of an aged person and that he had no fixed idea and belief as to the mental condition of C. L. Coulson on February 15, 1950, and that Griffin had no knowledge of having seen Coulson driving a car and no opinion as to whether Coulson operated his car in a normal way, and that Griffin had no bias in favor of proponent and no prejudice against contestants is contrary to the great weight and preponderance of the evidence.

Under Assignment No. 22 appellants have four subpoints and complain of the overruling of the Motion for a New Trial showing material misconduct of the jury because of the statements made by jurors Buster, Shoemaker, Reynolds and Griffin as hereinabove referred to.

In Assignments Nos. 23 and 24 complaint is made of the court's finding that:

"No juror in this cause made any statement to the jury during its deliberations and before it arrived at a verdict of any matter based upon the personal observations and knowledge of any juror outside the evidence herein * * *"

and that:

"All jurors selected and impaneled herein were fair and impartial * * *."

In Assignment No. 25 complaint is made of the court's Conclusion of Law No. 1 that:

"The jury in this case was qualified and impartial * * *"

because such is contrary to law and the facts.

In Assignment No. 27 complaint is made as to the court's Conclusion of Law No. 3, reading:

"No juror selected herein made an erroneous or incorrect answer on voir dire examination on any material matter inquired about, * * *"

is contrary to law.

In Assignments Nos. 29, 30, 31, 32 and 33 complaint is made concerning the exclusion from evidence of Direct Interrogatory No. 54 and its subdivisions, and the answers of the witness Dr. H. E. Hickman, in excluding the bank statements of appellee and the deposit slips of appellee, in excluding proof as to the value of all property and estate in the name of appellee Andrew Perry Clark on February 15, 1950 and subsequent thereto, and in excluding a letter dated December 10, 1957 from attorneys for appellee to a Mr. Royal Hart.

Under Assignment No. 34 complaint is made because of the refusal of the request of an attorney for appellants to have the court reporter read the evidence of witness McDonald, a dispute having arisen between the attorney and an attorney for appellee as to the testimony of such witness.

Appellee has seven counter points and are to the effect that the court did not err in refusing to grant a new trial on the grounds of the alleged bias and prejudice of jurors Buster, Shoemaker, Reynolds and Griffin and that the court's findings were amply supported by the record; that the court did not err in refusing a new trial because of alleged jury misconduct, and the findings relative thereto were amply supported by the record; that the court correctly excluded interrogatory No. 54 and the answer thereto in the deposition of

Dr. Hickman and did not err in excluding a number of exhibits of contestants; that if the court actually excluded the evidence as to the value of any property of Clark, such exclusion was not error; that the letter from appellee's attorneys to Mr. Hart, the temporary administrator, was properly excluded and that the court did not refuse the request of an attorney for contestants during his argument to the jury to have the reporter read the evidence of McDonald but granted such request.

There were a number of witnesses called by the proponent who detailed knowledge and association and observance of the deceased and who testified that the instrument dated February 15, 1950 was written wholly in the handwriting of the deceased Charles Louis Coulson, and that on such date the deceased possessed testamentary capacity; that the making and execution of said instrument was not procured by undue influence on the part of Andrew Perry Clark, and that the will had not been revoked.

There were an even larger number of witnesses called by the contestants who testified that Mr. Coulson was not normal and was of unsound mind, was not crazy, just not himself—not a normal human. These witnesses detailed association and observation of the deceased.

The testimony is long and we will not recite it other than that the several witnesses testified to certain acts and mannerisms of the deceased.

■ The jury saw the witnesses, observed them and resolved the fact issues in favor of the proponent of the will and we believe that the answers of the jury find adequate support in the record and that it is our duty to uphold the verdict. Ratliff v. Clift, Tex.Civ.App., 312 S.W.2d 315, error ref., N.R.E.; Ramm v. Ramm's Estate, Tex.Civ.App., 314 S.W.2d 847, error ref., N.R.E.

Proponent's Exhibit No. 1 is the purported will and is as follows:

as filed for Probate

San Angelo Tex. Feb 15/1950

Know all men by these presents that
I Charly Louis Cauchon, a single man
man never married, was Born Feb. 15/1873
is this day Writting my final and last
Will (in simple words, selling down the
things that I want done at my death
Andrew Perry LeLook has helped me take care
of what little Property I with the garden he
worked with me for the past 30 years, I know him
all his life, and I can trust him
therefore am leaving him in Charge
of any thing that I possess both real
State and Personal Property, to be executer
and trustee without bond. I do not owe any
money and all the cash that I have is

The First Motion will reach and San Angelo Tex.
not later than 1 year after I pass away. I
want Andrew to give in Cash $100 to the
aid of my niece Kate Cauchon, the title
and Dora Foster, also to give to my
Nephew Jeff Cauchon $100 in Cash.
My brother James, I am James Cauchon
has had charge of a House and lots for
many years he He is up the improvement,

but I pay the Taxs and insurance I want him to continue this as long as he lives. Then this Property will go to Andrew Perry Letoat. This Property is described as follows:
S 50 feet of lots 1 to 3 Block 28 Lasley add.
Lot 6      28
7      28
14      3
E 45 feet of Lot 5 Block 1 Morgan ad.
5, 6, 10, 11½ James Williams survey 68 x 210 feet all on 19th St except the S 50 feet of 1 to 3 it is on N Chadbourne.

Other realestate include Lot 1 survey 27 Bailey & Paul
N 101 feet of Lot 4 Block 2 Fairy add.
S 100      13-14 and E 35 feet of S 100 of lot 14
Lot 7 Block 2 Lasley add & Lot 1-2-3 Block 16 Multiraugh add
6-7    21

Lot 3-4-5-6-7 Block 15 main San Angelo
This Property is under a long lease to Wichita etc Co. at Andrew Death I want the income of this Property to go to his & Ben Charles and Louis Garon Clark and this one.

All other realestate and Real Property that is now in my Possesion I will Bequeth and give at my Death to the above mentioned Andrew Perry Leloch, and am trusting him to do with the income as I would do if I was living.

The Tax value made by the City for the year 1949 was $17,440 which is suppose to be 100% of value. I quit business in 1924 on account of my health. Andrew has looked after my business all that a part of my income has been about 50.00 a month the salaries to expences of taxes insurance and upkeep is paid

If any one should dispute or question my intentions of this will I do not want any court proceeding but rather take it to the First Baptist Church and let the Pastor and 12 of the oldest in service decide the question which should be final I am trusting all things to the God that created this world and all there in. He has blessed me with long life and happiness and he will bless those that love and trust him and are obedient to him.

Charles Louis Cousins

Feb 15/1950

Special Issue No. 1 inquired if the instrument dated February 15, 1950 offered for probate as his last will and testament was written wholly in the handwriting of the deceased, Charles Louis Coulson, and the jury answered that it was.

With appropriate instructions as to the term "testamentary capacity" the jury found that Charles Louis Coulson possessed testamentary capacity on February 15, 1950.

The jury found in answer to Special Issue No. 3 that the said instrument dated February 15, 1950 was not procured by undue influence on the part of Andrew Perry Clark.

In connection with this issue the court instructed, in an adequate way, the definition of undue influence.

The jury found that page 3 of the instrument dated February 15, 1950 was included in such instrument when it was signed by Charles Louis Coulson.

Based on the jury findings a judgment was rendered and entered that the will be and was admitted to probate as the last will and testament of Charles Louis Coulson, deceased, and Andrew Perry Clark, named as executor and trustee without bond, be issued letters testamentary without bond upon taking the oath required by law, and further decreed that the contestants take nothing.

We do not understand the contestants to seriously question the sufficiency of the evidence to support the jury findings. Their chief complaint is directed to jury misconduct and that certain members of the jury were biased and prejudiced against the contestants.

The motion for a new trial alleged that the controversy revolves principally around the question of testamentary capacity of C. L. Coulson on February 15, 1950, the date of the instrument offered as the last will and testament of the deceased, and whether said instrument was procured by undue influence on the part of Andrew Perry Clark.

Complaint was directed to an allegation that juror Buster was disqualified to serve as a juror because he had a bias in favor of proponent and prejudice against contestants.

The record in this case is very voluminous, the statement of facts on the main trial contains 974 pages with many exhibits, and on motion for new trial the statement of facts contains 215 pages. The briefs are perhaps necessarily large. Appellants' brief contains 249 pages while the brief for appellee is not so large. We are making no criticism as to the size of the record or of the briefs but only to demonstrate the task we have before us, and shall with due diligence attempt to arrive at a correct disposition of the appeal.

The appeal in this case is founded largely on jury misconduct, in failing to reveal certain facts as to such juror's acquaintance with the deceased and in statements made in the course of the jury's deliberations and the failure of the court to admit certain testimony.

An exhaustive hearing was had on the motion for new trial, at which hearing the jurors Shoemaker, Reynolds, Buster and Griffin testified as did R. W. Bowman, Mrs. Fred W. Elkins, Donald Jennings, Oscar Tumlinson, J. D. Norwood, E. G. Glover, Mrs. John W. Mozingo and Eckford White constituted the remainder of the jurors.

Mrs. Elkins testified that she heard Mr. Buster say that he knew Mr. Coulson and that he and his brother tried to lease some property from Mr. Coulson and that he thought Mr. Coulson was a good business man. The witness could not remember if the remarks were made in the jury room or in the hall.

R. W. Bowman, one of the jurors, testified that Buster and Shoemaker mentioned that they had in the past had dealings with C. L. Coulson.

Oscar Tumlinson testified that he heard some juror state that he had had some deal-

ings with Coulson; that this took place while they were at the jury table.

On cross-examination by attorney for contestants, Mr. Buster testified that one time he and his brother talked to Mr. Coulson about leasing some property for a filling station in 1939 or 1940; that during the trial he remembered that he knew Mr. Coulson; that he did not report the fact that he knew Coulson to anyone.

On May 23, 1958 the trial judge at the request of contestants made findings of fact and conclusions of law which are, in part, as follows:

"1.

"Mr. Edd Keyes, one of the attorneys for the Proponent, first examined the Jury Panel, stating to them the nature of the case and the name of the parties involved. During this examination two members of the Jury Panel were excused.

"Mr. B. W. Smith, one of the attorneys for the Contestants, then examined the Jury Panel. He also explained to the Jury the nature of the case, and the names of the parties interested. Mr. Smith asked the Jury Panel as a whole if any of them had known the deceased, C. L. Coulson and in reply to this question the Juror Mrs. Stites answered that she had known C. L. Coulson. The Jury Panel was then asked if there was any one else that had known Mr. Coulson or knew Mr. Clark or any of the parties involved or any of the facts in the case and, if so, to hold up their hands. No Juror indicated an acquaintance with the parties. Mr. Smith then asked the Jury Panel if there was anything in the mind of either of them or if either of them had an opinion about any fact or any of the parties that would keep them from going into the Jury box and trying the case as a fair and impartial Juror. To this interrogation there was no response from any Juror."

In paragraphs Nos. 2, 3, 4 and 5 the findings were that Buster was not asked any direct and specific questions with reference to his acquaintance or business transactions with the deceased Coulson; that the juror had no bias in favor of proponent and no prejudice against contestants; that Shoemaker was not asked any direct and specific questions with reference to having ever met or known the deceased, or having discussed a business transaction with him, and did not have an opinion with reference to whether Coulson was not a person of strong will or sound mind, and made no statement during the deliberations of the jury to such knowledge or opinion, and the juror had no bias in favor of proponent nor prejudice against the contestants; that attorneys for contestants did not ask juror Reynolds any direct and specific questions with reference to having ever met or known the deceased and at the time she was accepted on the jury she had no fixed idea or belief as to the hardening of the arteries on the minds of an aged person and did not state to the jury that her mother and father had been old and suffered with hardening of the arteries but that it did not affect their minds, and that she had no bias in favor of proponents and no prejudice in favor of or against the contestants.

That no direct and specific questions were asked juror Griffin with reference to having ever met or known the deceased, and that at the time he was accepted on the jury he had no fixed idea and belief that hardening of the arteries affected the mind of an aged person, had no fixed idea and belief as to the mental condition of the deceased on February 15, 1950, and no knowledge of having seen C. L. Coulson driving a car and had no bias in favor of proponent and no prejudice against contestants.

That the attorneys for contestants on voir dire examination of the jury panel did not ask any of the eight remaining jurors any direct and specific questions with reference to having ever known or met the

deceased or having discussed a business transaction with him.

In paragraph 7 the finding was that no juror made any statement to the jury during its deliberations and before it arrived at a verdict of any matter based upon the personal observation and knowledge of any juror outside the evidence herein.

The trial judge made further findings of fact as follows:

"8. No juror herein made any statement during the deliberations of the Jury indicating such Juror or Jurors favored answering Issue No. 4 'no', but on the contrary the first vote on Special Issue No. 4 resulted in unanimous vote to answer the same 'yes'.

"9. The Jury returned its verdict into the Court about one hour and fifteen minutes after it retired to consider its verdict.

"The Jury voted unanimously on all Issues on the first ballot except Special Issue No. 1. On Special Issue No. 1 one Juror abstained from voting on the first ballot, but all Jurors were unanimous on the second ballot on said Special Issue.

"10. All Jurors selected and empanelled herein were fair and impartial and each Juror gave careful and courteous attention to all parties and the Court during the trial hereof, which extended over a period of ten days."

The following conclusions of law were then made:

"1. The Jury in this case was qualified and impartial;

"2. There was no Jury misconduct during the trial of this cause nor during the deliberations of the Jury which resulted in probable injury to Contestants which would justify the granting of a new trial in this case;

"3. No Juror selected herein made an erroneous or incorrect answer on voir dire examination on any material matter inquired about."

Contestants filed objections to such findings and requested fact findings and conclusions of law, such being overruled and denied except as to certain facts as will be hereinafter set out.

Additional findings of fact were requested by contestants on May 28, 1958 and the court on May 30, 1958 filed additional fact findings as follows:

"1. During the voir dire examination of the Jury Panel by Mr. B. W. Smith, one of the attorneys for the Contestants, he stated to the Jury Panel that it was the contention of the Contestants that Mr. Coulson did not have testamentary capacity because of the diseases he was suffering from, such as arteriosclerosis which was a hardening of the arteries.

"2. The Juror Hylton Buster met the deceased, C. L. Coulson, at a time given as being between the years of 1938 and 1940 at the Coulson home at 803 South Irving Street, San Angelo, Texas. The Juror Buster was interested in acquiring a lease on some property purportedly owned by Mr. Coulson for the purpose of building a filling station thereon. The lease was not obtained. He had no recollection of meeting Mr. Coulson after that occasion.

"3. At the time the Juror Hylton Buster was examined and taken on the Jury he did not recall his visit to the Coulson home nor did he recall having met the deceased, C. L. Coulson."

The alleged jury misconduct is supported by the evidence of one of the attorneys for contestants and the motion was sworn to by the attorney and it was shown that none of the jurors would make an affidavit as to the truth of matters in the affidavit.

Each of the jurors as has been hereinabove mentioned denied the allegations of misconduct and the court as has been stated found that such did not occur.

The jury arrived at a verdict within a few hours, having no difficulty in so doing.

In a similar case, Tumlinson v. San Antonio Brewing Ass'n, Tex.Civ.App., 170 S.W.2d 620, 625, the following proposition of law was laid down:

"What took place on the voir dire is not disclosed in the Statement of Facts proper nor by a bill of exceptions. It is sought to be shown by the testimony of appellant's lawyers upon the hearing of the motion for new trial. We have serious doubts as to whether or not an occurrence upon the voir dire may be shown in the manner adopted in this case. The use of a bill of exception is patently preferable. However that may be, attorneys so testifying must be classed as interested witnesses, and therefore we can not say that the claimed occurrence took place in the face of the trial court's implied finding that it did not."

Rule 327, Texas Rules of Civil Procedure, provides in effect that a new trial may be granted on occasions where it is shown (1) that there was misconduct; (2) that the misconduct was material; and (3) if it reasonably appears from the evidence on the hearing of the motion for a new trial and the trial of the case and from the record as a whole that injury probably resulted.

■ Since no direct and specific questions were directed with reference to the desired information there was no showing of error, absent a showing of a concealment of facts. Thompson v. Quarles, Tex.Civ. App., 297 S.W.2d 321, er. ref., N.R.E.; Houston Belt & Terminal Railway Company v. Burmester, Tex.Civ.App., 309 S.W. 2d 271, er. ref., N.R.E.; Childers v. Texas Employers' Insurance Ass'n, 154 Tex. 88, 273 S.W.2d 587.

■ "Whether or not misconduct of a jury occurred is a question of fact, and when the evidence on the alleged act of misconduct is conflicting the Trial Court's finding is final

and binding on the reviewing court." Hollingsworth v. Williamson, Tex.Civ. App., 300 S.W.2d 194, 198, er. ref., N.R.E. and authorities cited therein.

■ We do not believe that the Court committed reversible error in excluding direct interrogatory No. 54 and the answer thereto of Dr. H. E. Hickman in his deposition.

The interrogatory as propounded is long and complex, as is frequently the case in hypothetical questions, and is difficult to understand. It encompassed many assumed facts which we do not believe are supported by the evidence.

Dr. Hickman did not know the deceased prior to March 20, 1956, the date he began to treat Mr. Coulson, who died April 16, 1956. The doctor was not acquainted with any of the relatives of the deceased and did not know anything about the mental or physical condition of Mr. Coulson on February 15, 1950.

■ Hypothetical questions should be clearly and specifically framed so as not to be confusing and based on the record and so that the jury can understand them. Texas Law of Evidence, McCormick and Ray, Sec. 1402, Vol. 2, p. 237.

■ A similar hypothetical question was propounded to and answered by Dr. J. Bunyard, a witness called by contestants, over objection of proponent, and there could have been no reversible error in excluding the interrogatory and answer thereto by Dr. Hickman.

■ By points Nos. 30, 31 and 32 complaint is made of the exclusion from the evidence of certain exhibits, being bank statements of Andrew Perry Clark, purporting to reflect dealings between Clark and the testator and bearing on the issues of undue influence and testamentary capacity and as to the value of all property in the name of Clark.

It appears that Clark came to live with the deceased Coulson in 1929, and Coulson began changing his will in 1934 and made several changes culminating in the will offered for probate.

It is apparent that C. L. Coulson had utmost confidence in Clark. We are unable to say that the will was unnatural because Mr. Coulson did not provide for his collateral kindred. 44 Tex.Jur. 610, Sec. 67; Morris v. Bailey, Tex.Civ.App., 16 S.W.2d 311.

■ We see no error in the court's exclusion of a letter dated December 15, 1957 from appellee's attorneys to the temporary administrator of the Coulson estate, which was long after Mr. Coulson's death.

■ With reference to appellant's Assignment No. 34 complaining of the failure of the court to refuse the request of an attorney, made during his argument to the jury, to have the court reporter read certain evidence given by Floyd E. McDonald.

It appears that during the argument of appellant's attorney, reference was made to testimony given by McDonald, a chemist, that two envelopes had been steamed open and then resealed and that an attorney for proponent made a statement that the witness did not so testify, and that such statement was a' falsehood.

The attorney for appellants then requested time to find the testimony and have the reporter read it to the jury. In response thereto the court remarked that such could be read. The record does not reflect any further action or an objection by the appellants, and such issue is not properly before this Court.

■ A motion has been filed to supplement the record with a certificate by the court reporter as to certain action of the court in overruling the request to have a part of the evidence read to the jury, and there is also filed a reply to such motion by appellee in which the court reporter makes a recitation that the court overruled the same, and added that maybe the envelopes should be sent to the jury.

We do not believe that there was an objection or exception made sufficient to present this matter to this Court and the motion to supplement is overruled.

As best we could, in view of the size of the record, we have given careful consideration to appellant's assignments and to the authorities cited in the well-prepared brief, but we do not find any reversible errors, and consequently affirm the judgment of the Trial Court.

Affirmed.

HUGHES, J., not sitting.