**Ewell WEST, Appellant,**

v.

**MATTESON–SOUTHWEST CO., Ltd.,
Appellee.**

No. 14084.

Court of Civil Appeals of Texas.

Houston.

June 13, 1963.

Rehearing Denied July 11, 1963.

Allbritton, McGee & Hand, Hugh E. McGee, Jr., Houston, for appellant.

Butler, Binion, Rice & Cook, R. H. Singleton, Houston, for appellee.

COLEMAN, Justice.

This is a suit to recover earnest money deposited by appellee in connection with a contract to purchase real estate. The principal question involved is whether appellee's termination of the contract for title defects was authorized by the contract.

Appellee sued Ewell West and San Jacinto Title Company of Pasadena for return of the earnest money deposit. The title company filed an answer tendering the money into court and did not take part in the trial and is not a party to this appeal. West answered and filed a cross-action for

forfeiture of the earnest money. Appellee recovered a judgment against West and the title company in the amount of the deposit plus interest.

After preliminary negotiations the parties executed an "earnest money contract." This contract was prepared by an associate and representative of appellant by filling out, and adding to, a printed form, and as is frequently the case when legal instruments are prepared by parties without legal training, the contract did not aptly express the agreement made by the parties.

By the earnest money contract executed on the 23rd day of June, 1960, Ewell West agreed to sell and convey by general warranty deed to Matteson-Southwest Company, Ltd. "all of the property owned at 4700 Travis Street being further described as all of block #20 Fitze Addition, Houston, Harris County, Texas." The agreement then provided:

"This property to be sold on a lease purchase agreement.

Option to purchase to be exercised on Sept. 30, 1960.

"The consideration for the sale and conveyance of said property is $122,-000.00 payable as follows: $25,000.00 cash to be paid by Purchaser at the time of signing of lease purchase agreement, and to apply to purchase price. Balance to be paid as follows:
Terms of lease:

Monthly rental $400.00 not to apply to purchase.

On Sept. 30, 1960 a cash balance of $40,200.00 to be paid and assume note in the amount of $56,800. Note terms 5 equal annual payments at 5½% interest on or before. First annual due Mar. 28, 1961. Prepayments privileges at no penalty or premium to purchaser at any time. All taxes and interest to be prorated to Sept. 30, 1960
Insurance paid up to Sept. 1, 1960.

Purchaser to assume full controll of property for any use, development and collection of rents on signing of lease agreement.

"This offer must be accepted and agreement executed by June 25, 1960 or it becomes null and void."

The rest of the contract is printed and reads as follows:

"Said note or notes (if any) to contain usual default and attorney's fee clauses and to be secured by vendor's lien, superior title and usual Deed of Trust lien on said property.

"In consideration of which, and within five (5) days from the date title to the above property is shown in Seller as hereinafter provided, Seller agrees to execute and deliver General Warranty Deed to Purchaser conveying said property free and clear of all encumbrances except those named herein, at which time Purchaser agrees to pay said consideration in the manner above provided.

"Seller, at his option, agrees to furnish within Fifteen (15) days from acceptance of this Contract by Seller, either a complete abstract on said property certified to date showing good title thereto in Seller, or an owner's title policy from SAN JACINTO TITLE COMPANY, 2302 FANNIN, CA 7–1195. For the purposes of this contract, Seller may elect to furnish at any time hereafter, within the time herein stipulated, an Owners' Policy which will then be considered as furnishing good title as herein contracted to be furnished.

"If abstract is furnished, Purchaser shall have fifteen (15) days from receipt by him of said abstract in which to either accept the title as shown by said abstract or to return same to Vendor or undersigned Agent with

written objections thereto. If said abstract is not returned to Seller or said Agent with such written objections within the time specified, the title to said property as shown by said abstract shall be construed to be accepted by Purchaser.

"If objections to said title as shown by the abstract are made, or if said title company's attorney makes objections to said title, then Seller shall have a reasonable time not to exceed thirty (30) days from the date such objections are made known to Seller in writing, in which to cure such objections as will show good title in Seller. In the event of failure to furnish good title the Earnest Money hereinafter mentioned and hereby receipted for is to be returned to Purchaser upon the cancellation and return of this Contract, or Purchaser may enforce specific performance of same.

"Any usual use restrictions, easements, reservations or zoning ordinances, to which the above property may be subject and which may be common to the addition or subdivision of which this property is a part, shall not be an objection to the title to said property, unless otherwise specified herein.

"As earnest money Purchaser has this day placed the sum of $6,100.00 together with a copy of this agreement in escrow with San Jacinto Title Co. Should the terms of this agreement be carried out within the time specified, said sum shall be applied to the cash consideration for the conveyance of the above property in accordance with the terms hereof, but should Purchaser fail to consummate this agreement within the time specified herein, for any reason except title defects as would show title in Seller not to be good, Seller shall have the right to said sum as liquidated damages and shall pay to undersigned Agent therefrom one half of said cash deposit, not exceeding, however, the commission agreed to be paid by Seller to Agent as hereinafter provided; or Seller may enforce specific performance of this contract.

"Seller agrees to pay to as per previous agreement , Agent, a commission of $ _____ for the sale of the above property.

"Unless otherwise specified herein possession of said property shall be delivered to Purchaser upon the consummation of this transaction.

"Seller shall furnish proper evidence of payment of all taxes to and including the preceding year and taxes for the current year, and current rents, insurance and interest (if any) are to be prorated to date of closing.

"Executed in quadruplicate this 22 day of June , 1960 .

"This contract subject to acceptance by Seller evidenced by Seller's signature hereto.

"/s/ Ewell West
 Seller

"L. W. Matteson Purchaser

"BY: /s/ Dean E. Lear
 Purchaser"

The next day, June 24, 1960, the Seller, appellant herein, caused to be delivered to the purchaser a proposed lease and option agreement. This instrument described the

property (omitting more specific descriptive matter contained therein) as being two tracts, Tract 1 containing all of Block 20 of the C. G. Fitze Addition in Harris County, Texas, together with a strip 25 feet wide along the east side of Lots 1, 2, 3 and 4 thereof. Tract 2 was described as a strip of land lying immediately east of and adjacent to the 25 foot strip of land and was further described by metes and bounds.

The agreement also provided that in consideration of $25,000.00 cash paid by lessee to lessor, lessee was given an option to purchase the described land on September 30, 1960, for $122,000.00. It provided that written notice of election to exercise the option must be given prior to September 30, 1960, and that on giving the notice, either party could demand an additional ten days in which to close out the sale. It provided that on exercise of the option the $25,000.00 should be applied to the purchase price and that the balance of the purchase price should be paid in cash and by the assumption of certain notes constituting a lien on part of the property.

In another paragraph of the lease-option agreement it was provided that Tract 1 was to be conveyed free and clear of any and all encumbrances except the "obligation due to Sallie Shepherd Perkins" and free and clear of reservations, restrictions, easements, and covenants running with the land "except those easements reflected by owner's title commitment * * * attached hereto * * *." Tract 2 was to be conveyed without warranty.

It was further specified that if the option was exercised, lessor would furnish lessee an owner's title policy guaranteeing title to Tract 1 subject only to the exceptions reflected by the attached commitment.

The attached title policy commitment was issued by San Jacinto Title Company as agent of Louisville Title Insurance Company. By it the company, in effect, agreed to issue a title policy to appellee when title was vested in appellee free and clear of

defects, liens and incumbrances arising after June 24, 1960, and before the date of issuance subject to: (1) restrictive covenants affecting the property, (2) any discrepancies, conflicts, or shortages in area or boundary lines, or any encroachments or any overlapping of improvements which a correct survey would show, (3) rights of parties in possession, (4) taxes for 1960 and subsequent years, (5) the lien securing the Perkins note, (6) "Easement fifteen feet in width along the North line of said property granted to Houston Lighting and Power Company by instrument recorded in Vol. 1267, pg. 612 and by instrument recorded in Vol. 1269, pg. 181 both Deed Records of Harris County Texas," (7) Subject to terms and conditions set out in lease—option to purchase dated June 24, 1960, between Ewell West and Matteson-Southwest Co., Ltd.

After receipt of this instrument a letter was prepared by appellee's attorney addressed to L. W. Matteson, which was signed by Ewell West and accepted by Matteson-Southwest Company, Ltd., after certain handwritten revisions were made. This letter provided that it would supplement the agreement of June 23, 1960. The description of the property was then changed to conform with the description contained in the proposed lease-option agreement. Paragraph (2) of the letter agreement reads: "The closing of this transaction shall occur on or before June 30, 1960."

Paragraph (3), as amended in handwriting, reads:

"Should the terms of our agreement be carried out within the time specified the $6,100 earnest money shall be applied to the cash consideration for the granting of the option in accordance with the terms of our agreement, but should you fail to consummate our agreement within the time specified for any reason except title defects as would show title in the undersigned not to be good *as to tract one only and pro-*

*vided further as to tract II you will accept a limatation tittle if San Jacinto Tittle Co. will issue an Owners Tittle policy theron,* the undersigned shall have the right to said sum as liquidated damages and shall pay to the agent therefrom one-half of said cash deposit, not exceeding, however, the commission agreed to be paid by the undersigned to said agent." (words italicized added in handwriting)

On June 30, 1960, Matteson wrote West a letter cancelling the contract because the Houston Lighting & Power Company easement constituted a defect in title and because of failure of title to Tract 2.

Certain special issues submitted to the jury were answered as follows:

### "SPECIAL ISSUE NO. 1

"Do you find from a preponderance of the evidence that on June 24, 1960, Ewell West agreed to furnish Matteson-Southwest Co., Ltd., an owner's title policy from San Jacinto Title Company covering the 12½ foot strip of land in question by June 30, 1960?
"Answer: 'We do'.

### "SPECIAL ISSUE NO. 5

"Do you find from a preponderance of the evidence that the Plaintiff canceled the contract before allowing a reasonable time for the Defendant, West, to meet and cure the objections pointed out in writing?
"Answer: 'We do not'.

### "SPECIAL ISSUE NO. 7

"Do you find from a preponderance of the evidence that the term 'the closing of this transaction shall occur on or before June 30, 1960' was intended by the parties to mean that a title policy commitment would be furnished from San Jacinto Title Company by such date?
"Answer: 'We do'.

### "SPECIAL ISSUE NO. 8

"Do you find from a preponderance of the evidence that the term 'the closing of this transaction shall occur on or before June 30, 1960' was intended by the parties to mean that only a lease-purchase agreement would be entered into?

"Answer: 'We do' ".

Appellant contends that the trial court erred: (1) in submitting the case to the jury on special issues; (2) in refusing to instruct a verdict for appellant; and (3) in entering judgment on the jury's verdict because of a conflict in the answers to Special Issues Nos. 1 and 8. He also assigns as error his contention that the answer made by the jury to Special Issue No. 1 has no support in the evidence.

 Assignment of Error No. 1 is too general and multifarious to be considered. Appellant's objection to the special issue submission is based on his contention that the only issue before the court was the legal effect of the language used in the written contract, and that, therefore, there were no issues of fact for determination by the jury. By this point this Court would be required to determine whether each of the eight issues submitted were in fact questions of law, and, if one or more were determined to be questions of fact, whether or not such issues were raised by the evidence. While prejudicial error would be committed by rendering a judgment based on the answers made by a jury to improper issues, we fail to see how the action of the court in submitting a case to the jury on special issues, in the absence of other error, could prejudice appellant. Rule 277, T.R.C.P., authorizes the trial court to submit a case to the jury on special issues without the request of either party. It follows that an objection must be made to the issues submitted rather than to the charge as a whole.

Appellant contends that the trial court should have instructed a verdict in his

favor because of the unauthorized cancellation of the contract by appellee.

In Lone Star Gas Co. v. X-Ray Gas Co., 139 Tex. 546, 164 S.W.2d 504, the court set out certain rules of construction applicable to this case in these words:

> "* * * The contract should be considered as a whole, in order to give effect to its general purpose and the true intention of the parties. If the intention of the parties who executed this contract can be fairly ascertained from a consideration of the entire instrument, such intention will not be permitted to be defeated by ambiguities or inconsistencies therein. (Citations omitted) If the language used in this contract is fairly susceptible of more than one interpretation, it is the duty of a court, in ascertaining the true intention of the parties to consider the subject matter of the contract and the surrounding circumstances existing when such contract was executed. (Citations omitted) * * *

> "* * * If there is any doubt as to the meaning of a contract * * *, the courts may consider the interpretation placed upon it by the parties themselves."

■ This Court has previously held that where a contract is ambiguous and a dispute has arisen as to the interpretation placed on it by the parties, the issue as to its true meaning is one of fact for the jury. Ellisor v. Kennedy, Tex.Civ.App., 128 S.W.2d 842, error ref.

■ In this case the intention of the parties is not clearly expressed and certain clauses are in conflict. In such a case it is the duty of the court, after the factual disputes are resolved by the jury, to adopt such a construction of the contract, if possible, "as will make the agreement fair, customary, and such as prudent business men would naturally execute." Stone v. Robinson, Tex.Civ.App., 180 S.W. 135, error ref.

■ The trial court did not err in refusing to instruct a verdict. By Special Issues Nos. 1, 5, and 7, for example, issues of fact raised by the evidence were submitted to the jury.

■ There is evidence to support the answer made by the jury to Special Issue No. 1. Prior to the execution of the contract appellant's associate furnished appellee with a map which included the 12½ foot strip of land as a part of the over-all strip which he proposed to sell. Immediately after the earnest money agreement was signed, appellant gave appellee a copy of his proposed Lease-Purchase Agreement, which contained a specific description of this tract, although it was not included in the specific description contained in the earnest money agreement. This indicates that appellant intended to include the 12½ foot strip in the transaction as part of the "property owned at 4700 Travis Street." There is further evidence of intention in that provision of the supplementary agreement "provided further that you will accept a limatation tittle if San Jacinto Tittle Company will issue an owners Tittle policy theron." Special Issue No. 1 in effect asked two questions: Whether by the agreement appellant intended to furnish a title policy to the small tract, and whether the title policy was to be furnished prior to June 30, 1960. No complaint is made here as to the form of the issue, and the point presented is a "no evidence" point.

■ Appellant, by his final point contends that the answer to Special Issue No. 1 conflicts with the answer made to Special Issue No. 8. While we have been cited no authority to demonstrate that it is illegal for a title insurance company to issue an owner's title policy based on a lease-purchase agreement, and while there is no evidence that such a policy might not be procured, even if we should assume both premises, there is no conflict in findings requiring a new trial. The jury would thereby find that the parties agreed to do something that could not be

done The jury's answer to Special Issue No. 8 has not been attacked. Merely because the jury might have found that the parties agreed to do something that they would be unable to accomplish does not demonstrate a conflict. A jury finding that only a lease-purchase agreement was to be completed on June 30, 1960, does not make it impossible that the parties also intended that an owner's title policy also be furnished. If Special Issue No. 1 is disregarded, appellant is convicted of a breach of the contract by Special Issue No. 7. Special Issue No. 8 could be disregarded without requiring the court to enter a verdict for appellant. Under such circumstances a conflict in answers to jury issues is not fatal. Texas & P. Ry. Co. v. Snider, 159 Tex. 380, 321 S.W.2d 280.

The judgment of the trial court is affirmed.