The AETNA CASUALTY AND SURETY COMPANY, Appellant,

v.

T. H. SCOTT, Appellee.

No. 44.

Court of Civil Appeals of Texas.

Houston (14th Dist.).

Jan. 3, 1968.

Rehearing Denied Jan. 31, 1968.

L. S. Carsey, Stanley Crawford, and Fulbright, Crooker, Freeman, Bates & Jaworski, Houston, for appellant.

Horace F. Brown, Houston, for appellee.

TUNKS, Chief Justice.

This is a workmen's compensation case.

In the trial court, the jury found that the plaintiff, appellee here, sustained an accidental injury on February 28, 1964, while working for his employer for which the defendant, appellant here, was the compensation carrier and that such injury was a producing cause of eight weeks and two day of total incapacity. The parties stipulated as to the plaintiff's average weekly wage before his injury and the jury found his wage earning capacity during the period of his partial incapacity. The trial court rendered judgment on that verdict for the plaintiff.

The parties will be designated as in the trial court.

The defendant seeks a reversal and remand based upon the following summarized points of error: insufficiency of the evidence to support the finding of accidental injury; jury misconduct; erroneous exclusion of a written statement by plaintiff to the effect that his incapacity was not caused by a compensable injury; and the trial court's error in permitting certain testimony to be read back to the jury. The defendant also asserts that the cumulative harmful effect of those alleged errors requires a reversal. It is to be noted that the defendant does not challenge the sufficiency of the evidence to support the jury's findings as to the extent of the plaintiff's incapacity.

■ As to defendant's first point of error—we hold the evidence sufficient to support the jury's finding that the plaintiff sustained an accidental injury as alleged by him.

The plaintiff, at the time of his alleged injury, was a sixty-two year old ironworker. He testified that on February 28, 1964, while unloading steel from a truck, he bent over to lift a piece of steel when "a sharp pain hit me in the back." He continued to work that day and the following days until March 17, when he went to his family doctor for an examination. The pain in his back continued during this period. He had suffered from prostatitis and a kidney ailment for some time in the past and apparently attributed his pain to those conditions until his family doctor, on examination, ruled them out as a cause. Although, during the interval between the onset of his pain and the examination by his doctor, he complained to his foreman of his pain and sought light duty, it was not until after the examination that he first claimed that his disability was due to an accidental injury received on February 28.

The plaintiff was off work from March 17, 1964, until February or March of 1965. He then started working as a guard on the waterfront. He had occasionally worked as a clerk in a liquor store. He testified that his pain continued up to the time of the trial and that he was not able to do the heavy work he had done before February 28, 1964.

The plaintiff's family doctor testified that on March 17, 1964, the plaintiff came to him to be examined for an injury to his

kidney and that his kidney and prostate were normal. He recommended that plaintiff see an orthopedic surgeon.

On March 26, 1964, the plaintiff was examined by Dr. George H. Lane, a qualified orthopedic surgeon. Dr. Lane made a clinical examination and took X-rays of plaintiff's low back. He testified that the X-ray films showed a minimal compression fracture of the fifth lumbar vertebra and that it was "a reasonably fresh fracture." He also testified that the films showed that the plaintiff suffered from osteoporosis and osteoarthritis which were of long standing, ante-dated the February 28, 1964 injury, and that such conditions were not unusual in a working man of plaintiff's age. Based on the history given him by the plaintiff and his clinical and X-ray findings, Dr. Lane expressed an opinion that the plaintiff sustained the fracture at the time of his injury on February 28. He reached this conclusion despite the fact that the mechanics of the injury described by the plaintiff were not of the type that would be expected to produce a compression fracture.

The plaintiff continued to report to Dr. Lane on infrequent occasions up to the time of the trial. Dr. Lane prescribed a back brace and certain medication for him. Dr. Lane was of the opinion that the plaintiff would never again be able to do the work of an ironworker.

The plaintiff, at the request of the defendant, was examined by a radiologist, a neurosurgeon and another orthopedic surgeon. Each of them was well qualified in his specialty. Their testimony can generally be summarized as follows: they all testified that the X-ray films of plaintiff's lumbar spine showed osteoporosis and osteoarthritis which originated before the date of plaintiff's alleged injury. They expressed some doubt that the plaintiff had ever sustained a compression fracture and all agreed that, if he had, it was sustained long before February 28, 1964. They were of the opinion that any incapacity being experienced by the plaintiff at the date of their examination of him was due to his osteoporosis and osteoarthritis.

In our opinion, the evidence was sufficient to support the jury's finding that the plaintiff sustained an accidental injury as alleged by him.

■ The plaintiff was the beneficiary of a group insurance policy that excluded loss resulting from on-the-job accidental injuries. After his examination by his family doctor, he made a written claim for benefits under that policy. In that claim he made the statement that the medical expense incurred on the March 17, 1964 examination, for which he was claiming reimbursement, was not the result of an on-the-job injury. The defendant interrogated the plaintiff about that claim. He admitted having signed it and that in it he had made the statement that the medical expense for his examination was not due to an on-the-job injury. The defendant offered the claim in evidence as an exhibit. The trial court sustained the plaintiff's objection. The exhibit, when offered by the defendant, was not hearsay because it was a statement by the plaintiff. It would have been admissible except for the fact that it revealed, on its face, payment to the plaintiff from a collateral source. Since the evidentiary substance of the statement was revealed by the oral testimony of the plaintiff, the trial court properly excluded the exhibit. Traders & General Ins. Co. v. Reed, Tex.Civ. App., 376 S.W.2d 591, err. ref., n.r.e.; Mosby v. Texas & P. Ry. Co., Tex.Civ.App., 191 S.W.2d 55, no writ history.

The jury on its first vote was divided 11 to 1 in favor of a "we do" answer to the first special issue which asked if the plaintiff had sustained an accidental injury. That division continued into the second day of deliberation and until the trial judge, at the jury's request, permitted some of the medical testimony to be read back. When the jury returned to the jury room after hearing that testimony read back to them, one juror said that a one-time co-worker

354

of his had broken his leg and had continued to limp after the X-rays showed that the break had healed. Soon after returning to their deliberations, the dissenting juror changed his vote and a verdict was reached.

■ By a point of error, the appellant contends that the trial court erred in overruling appellant's motion for a new trial because of this jury misconduct. We overrule that point of error.

The testimony (on motion for new trial) clearly indicated that it was the reading back of the medical testimony and not the statement of the fellow juror which caused the dissenting juror to change his vote. The trial court was amply justified in concluding that the record did not show any probable prejudice to the defendant. St. Louis Southwestern Ry. Co. v. Gregory (Tex.Sup.Ct.) 387 S.W.2d 27; Sims v. McKnight, 420 S.W.2d 173, no writ history; Rule 327, Texas Rules of Civil Procedure.

As indicated above, the jury, during its deliberation, requested that some of the medical testimony be read back to it. That written request was in the following language:

"Judge Snell,

"Dr. Lane indicated on two x-rays what he considered a minor spinal fracture, on the first, and an indication of healing and disappearance of this fracture, on the second x-ray.

"The jury wishes to be refreshed on the testimony of the other medical witnesses as relates to a spinal injury and the dates of the x-rays submitted in evidence by Dr. Lane and those other doctors who made references to a spinal injury.

Benton W. S. Dodge,
Foreman"

In response to that request, the court caused to be read twenty-five pages of testimony. The defendant objected to the court's action in permitting two questions and answers of the neuro-surgeon who had

been called as a witness by the defendant to be read. In that testimony, the witness said, in summary, that if plaintiff's history be accepted as true, and considering his (the witness) clinical and X-ray findings, "you have to say in all likelihood there is some precipitating or aggravating factor on this pre-existing condition."

The defendant also objected to the trial court's action in refusing to permit to be read back other parts of the neurosurgeon's testimony, as requested by defendant. In that part of his testimony, the witness said that he did not think that there had been any significant bone changes as a result of the February 28, 1964 event, but that each injury would aggravate the plaintiff's pre-existing conditions, osteoporosis and osteoarthritis.

Rule 287, T.R.C.P., provides that, if the jury disagree on a witness' testimony as to a particular point, the trial court may have the witness' testimony on that point read back to the jury in response to the jury's request that such be done.

■ By the very nature of the situation that arises in the application of that rule, the trial judge is required to exercise judgment and discretion in deciding what part of the testimony is relevant to the point in dispute. The statement of facts in this case has more than 100 pages of medical testimony from five doctors. It, of course, had not been reduced to writing at the time the request was made and the task of selecting the portion relevant to the inquiry was not an easy one. Under such circumstances, the judge must be given broad discretion and his action held erroneous only where there is an abuse of that discretion with resulting harmful effects. American Nat. Bank v. Haggerton, Tex.Civ.App., 250 S.W. 279, no writ history.

■ We are of the opinion that the trial judge fairly selected the testimony to be read to the jury in response to its request. We are also of the opinion that granting the request of the defendant, excluding the

part of the testimony objected to and including the part requested, would not have kept the dissenting juror from changing his vote. The juror testified, on the motion for new trial, that the testimony showed him to have been in error in his recollection of what the doctor had said. He also testified that he would not have changed his mind if *all* of the doctor's testimony had been read back. We are of the opinion that the record does not disclose any harmful error by the trial court in its response to the jury's request. American Nat. Bank v. Haggerton (supra), Rule 434, T.R.C.P.

The judgment of the trial court is affirmed.