**L. D. BOUNDS, Appellant,**

v.

**Kerry Tyrone CAUDLE et al., Appellees.**

**No. 1115.**

Court of Civil Appeals of Texas, Corpus Christi.

March 31, 1977.

Rehearing Denied April 20, 1977.

Second Motion for Rehearing Denied May 12, 1977.

Lee Mahoney, Mahoney, Shaffer, Hatch & Layton, Corpus Christi, for appellant.

James P. Ryan, Wood, Burney, Nesbitt & Ryan, Corpus Christi, for appellees.

## OPINION

YOUNG, Justice.

This is an appeal from two separate judgments resulting from a consolidated jury trial of a probate proceeding and a tort action. These suits arose from the death by gun shot on March 1, 1971, of Robbie Bounds. The children of Mrs. Bounds alleged that their stepfather, Dr. L. D. Bounds, wrongfully caused that death.

Cause # 110,807–A in the trial court was an appeal from the judgment rendered by a county court at law of Nueces County, Texas, admitting the will (wherein Dr. Bounds was designated primary beneficiary and independent executor) of Robbie Morris Caudle Bounds to probate. Cause # 115,954–B was an original suit in a district court (the trial court) by Cheryl Kay Caudle and Kerry Tyrone Caudle for damages, both actual and exemplary; for recovery of proceeds under life insurance policies; and for imposition of a constructive trust on property passing under the will of Mrs. Bounds. A judgment in favor of the plaintiff-children was entered in each case. The defendant then perfected his appeal in each case. Thereafter this court ordered consolidation of the cases for purposes of appeal.

The parties tried the cases to a jury which found: (1) that Dr. Bounds shot and killed Mrs. Bounds; (2) that the shooting and killing was intentional; (3) that the shooting and killing was wrongful; (4) actual damages of $10,000.00 for Kerry and $25,000.00 for Cheryl; (5) exemplary damages of $25,000.00 for Kerry and $25,000.00 for Cheryl.

Based upon that verdict, the undisputed evidence, and the stipulation of the parties, the trial court rendered judgment in the probate matter that the will of Mrs. Bounds be admitted to probate and that Dr. Bounds be declared disqualified to serve as independent executor of the estate of Mrs. Bounds.

Further, the trial court rendered judgment in favor of Kerry and Cheryl in the other case, the tort case, declaring a constructive trust in favor of Kerry and Cheryl and vesting title to them to the extent of 25% each in all the community property (listed in the judgment) of Dr. and Mrs. Bounds; for all the damages to each, both actual and exemplary, awarded by the jury; for one-half each of the insurance proceeds; and for funeral expenses. Dr. Bounds appeals from both judgments.

Robbie Caudle and Dr. Bounds were married May 18, 1962. Each of them had been married once before and each of them had two children by their respective prior marriages. No children were born to them during their nearly nine years of marriage. Their marriage contained much discord with attendant arguing and actual fighting. On the night of the shooting, the parties had been to the Embers Club with friends for dining and drinking. While there they began an argument which continued until they left to go home, on the way home and after they arrived at home. Soon after their arrival at home, where only she and he were present, a revolver was brandished, Mrs. Bounds was shot twice, and she died almost immediately. The evidence is conflicting about whether Dr. Bounds shot her intentionally or whether she was shot while he was attempting to wrest the revolver from her grasp. Following the death, appellant was indicted for murder, but was convicted only of negligent homicide in the first degree, a misdemeanor.

Appellant has brought forward 21 points of error. We have grouped for discussion many of the appellant's contentions because several of his contentions are threaded throughout several of his points and subpoints.

This brings us to the appellant's assertion in points 2(1), (2), 12, 13, 15(5), (6) and (7) that as a matter of law Kerry and Cheryl are not entitled to recover as Mrs. Bounds' only surviving heirs at law under Tex.Rev. Civ.Stat.Ann. art. 4671 et seq., for actual and exemplary damages. As we have not-

**442**

ed, the appellees had pleaded and recovered under Article 4671, et seq., against the appellant for their damages for wrongful death on the theory that the appellant wrongfully killed their mother. Under the prevailing law of this state we hold that these statutory beneficiaries, the appellees, have no cause of action for damages and that part of the tort judgment must be reversed and rendered. The reasons for this result were ably pointed out in *Donsbach v. Offield*, 488 S.W.2d 494 (Tex.Civ. App.—Austin 1972, no writ). And in our discussion here, we have borrowed liberally from the reasoning and phrasing set out in *Donsbach.*

As in *Donsbach*, the denial to the appellees of their damages is made necessary by Article 4672 in connection with the doctrine of interspousal tort immunity. This article denies the beneficiaries a death action unless the deceased would have had a cause of action to recover for personal injuries had he or she survived the damaging event. In our case had Robbie Bounds survived the shooting, she would have been denied an action against Dr. Bounds under the well established doctrine of interspousal immunity. *Nickerson and Matson v. Nickerson*, 65 Tex. 281 (1886). The victim's disability extends also to the beneficiaries through Article 4672, and the beneficiaries are also precluded. *Childs v. Childs*, 107 S.W.2d 703 (Tex.Civ.App.—Beaumont 1937, no writ); *Wilson v. Brown*, 154 S.W. 322 (Tex.Civ. App.—Austin 1913, writ ref'd).

■ Again as explained in *Donsbach*, the doctrine of interspousal tort immunity is well entrenched in our jurisprudence, rightly or wrongly. This is true whether the tort was negligent or intentional. *Turner v. Turner*, 385 S.W.2d 230 (Tex.Sup. 1965); *Nickerson and Matson v. Nickerson*, supra; *McGlothlin v. McGlothlin*, 476 S.W.2d 333 (Tex.Civ.App.—San Antonio 1972, writ ref'd n.r.e.); *Lunt v. Lunt*, 121 S.W.2d 445 (Tex.Civ.App.—El Paso 1938, writ dism'd). See Comment: Intra Family Immunity—The Doctrine and Its Present Status, 20 Baylor L.Rev. 27 (1968), for criticism of the doctrine of interspousal immuni-

ty. Therefore, the wrongful death and interspousal contentions in his points 2(1), (2), 12, 13, 15(5), (6) and (7) of the appellant are sustained.

■ In his points 2(3), (4), 7, 15(1), (2) and (3), the appellant argues that because he has not been sentenced and convicted as a principal or accomplice in willfully bringing about the death of Mrs. Bounds, as required by Tex.Prob.Code Ann. 41(d) and Tex.Ins. Code Ann. § 21.23, the appellees are not entitled: to impose a constructive trust on property passing under her will; to receive the proceeds of life insurance policies on her life.

As we have noted, the only showing in the record of any conviction and sentencing of Dr. Bounds is in connection with the charge of negligent homicide in the first degree. Nevertheless, we disagree with the appellant's foregoing position about the necessity of conviction and sentencing.

We again point out that the jury in our case found that Dr. Bounds both "intentionally" and "wrongfully" killed Mrs. Bounds. Article 21.23 of the Insurance Code calls for forfeiture of the beneficiary's interest where the beneficiary (Dr. Bounds) is the "principal or an accomplice in willfully bringing about the death of the insured." "Willfully" as used in Article 21.23 has been defined by our Supreme Court as ". . . where the beneficiary intends to kill the insured and the killing is illegal . . ., even though the killing was done under the immediate influence of sudden and violent passion from an adequate case." *Greer v. Franklin Life Ins. Co.*, 148 Tex. 166, 221 S.W.2d 857 (1949). Therefore, because the jury found an "intentional" and a "wrongful" killing by Dr. Bounds, we uphold the appellees' recovery of insurance proceeds even though Dr. Bounds has not been "convicted" or "sentenced" for a willful killing.

Appellant urges a similar contention in his constructive trust complaints based on the following language of the Probate Code.

"(d) *Convicted Persons and Suicides.* No conviction shall work corruption of blood

or forfeiture of estate, except in the case of a beneficiary in a life insurance policy or contract who is convicted and sentenced as a principal or accomplice in wilfully bringing about the death of the insured, in which case the proceeds of such insurance policy or contract shall be paid as provided in the Insurance Code of this State, as same now exists or is hereafter amended; nor shall there be any forfeiture by reason of death by casualty; and the estates of those who destroy their own lives shall descend or vest as in the case of natural death."

Regardless of the above language about "convicted", "sentenced", and "casualty", the courts of this State have adopted the modern view that the law will impose a constructive trust upon the property of a deceased which passed either by inheritance or by will if there is sufficient proof to sustain an allegation that the beneficiary willfully and unlawfully caused the death of the deceased. *Pope v. Garrett,* 147 Tex. 18, 211 S.W.2d 559 (1948); *Parks v. Dumas,* 321 S.W.2d 653 (Tex.Civ.App.—Fort Worth 1959, no writ); *Pritchett v. Henry,* 287 S.W.2d 546 (Tex.Civ.App.—Beaumont 1955, writ dism'd). Therefore, in view of the jury findings we noted above, appellant's constructive trust contentions are also overruled. Appellant's points 2(3),(4), 7, 15(1), (2) and (3) are overruled.

In appellant's point 1, he attacks the propriety of the trial court's consolidation for trial of the probate case and the tort case. He says the causes are so dissimilar that he has been prejudiced by the joint trial.

It is well settled law that the trial court has broad discretion in the consolidation and severance of causes of action. It is also established that the trial court's decision to consolidate or sever a cause of action will not be overturned unless abuse of discretion is shown. *McGuire v. Commercial Union Insurance Company of New York,* 431 S.W.2d 347 (Tex.Sup.1968); *Womack v. Berry,* 156 Tex. 44, 291 S.W.2d 677 (1956); *Cruz v. Guajardo,* 502 S.W.2d 610 (Tex.Civ. App.—Corpus Christi 1973, no writ). Rule 174(a), T.R.C.P., states that consolidation is proper where there are "common question of law or fact . . . pending before the court."

In our case the trial court consolidated a probate case with a tort case containing several causes of action: for wrongful death; for imposition of a constructive trust; and for insurance proceeds. These cases and the causes of action therein presented a common question of fact: whether Dr. Bounds willfully killed Robbie Bounds; and if so, whether he was "unsuitable" to be the independent administrator of her estate; whether he was liable under the Wrongful Death Statute; whether he was subject to a constructive trust being imposed on the deceased's estate; and whether he should receive life insurance proceeds. Thus, determination by the trial court of this fact question was common to all causes of action and consequently there was no abuse of discretion by the trial court in consolidating them to avoid unnecessary cost or delay. Appellant's point 1 is overruled.

Appellant's point 3 complains that the trial court was in error in overruling his special exceptions to plaintiffs' third amended original petition. After a full review of the record, we are unable to locate the special exceptions upon which this point is based. Without such exceptions, we are unable to determine the specific grounds of which appellant complains and we therefore overrule his point 3. *Charlie Thomas Courtesy Ford, Inc. v. Sid Murray Agency,* 517 S.W.2d 869 (Tex.Civ.App.—Corpus Christi 1974, writ ref'd n. r. e.); *Barber v. Corpus Christi Bank & Trust,* 506 S.W.2d 254 (Tex. Civ.App.—Corpus Christi 1974, no writ).

Appellant's point 4 asserts error in the trial court's denial of appellant's motion for discovery under Rule 167, T.R.C.P. Appellant's motion was multi-pronged in that it sought a list of all witnesses to be called by appellees and the opinions and theories of Dr. Joseph Rupp, the county medical examiner, whether oral or written. He had received copies of all those which had been reduced to writing; namely, the autopsy report.

The purpose of Rule 167 is to permit inspection and copying of "tangible things" within the opposing party's custody upon a showing of good cause. Although we are required to give this rule a liberal construction, it was never intended to allow fishing excursions. *Texhoma Stores, Inc. v. American Central Insurance Company,* 424 S.W.2d 466 (Tex.Civ.App.—Dallas 1968, writ ref'd n. r. e.). Rule 167 was not intended to allow invasion of the opposing party's thinking processes or that of his expert witnesses.

Appellant also requested discovery of the names of appellees' witnesses. In that regard, Rule 167 also provides:

"The identity and location of any potential party or witness may be obtained from any communication or other paper in the possession, custody or control of a party, . . ."

Appellant, however, still has the burden of showing that the failure of the trial court to grant this request was reasonably calculated to and probably did cause the rendition of an improper judgment. Rule 434, T.R.C.P. *Southwestern Greyhound Lines v. Dickson,* 149 Tex. 599, 236 S.W.2d 115 (1951). Appellant has failed to meet this burden and therefore we find this error harmless, if error at all. Appellant's point 4 is overruled.

Appellant's point 5 asserts that the charge constitutes a general charge. To object to the court's charge as general, without designating any specific issue, is to no avail. *West v. Matteson-Southwest Co.,* 369 S.W.2d 496 (Tex.Civ.App.—Houston 1963, no writ); *Thaxton v. Reed,* 339 S.W.2d 241 (Tex.Civ.App.—Dallas 1960, writ ref'd n. r. e.). In reviewing the argument under this point, we find no allegation which directs this Court to the specific issue complained of. Appellant's point 5 is overruled.

In his points 9 and 14, appellant further challenges the charge of the court for failure to give an instruction on self-defense. Rule 279, T.R.C.P., requires the submission of controlling issues where supported by pleadings and evidence of the case. We find that the evidence presented here does not support an issue on self-defense, as we will demonstrate.

Dr. Bounds testified that Robbie Bounds held the pistol on him as he emerged from the bathroom; that he got close to her and grabbed the gun; that a struggle ensued and Robbie Bounds was shot twice. It was also his testimony that he could not remember if his finger was on the trigger but that he was not trying to put it there or to shoot Mrs. Bounds. Concerning the second shot, Dr. Bounds testified that he did not remember if his finger was on the trigger but that the gun was in Mrs. Bounds' hand and that he did not cock the pistol. On redirect, Dr. Bounds further testified that his actions were not willful and that he did not intend to kill or to injure the deceased.

It is settled law that the law of self-defense is the same in both civil and criminal cases. *Fambrough v. Wagley,* 140 Tex. 577, 169 S.W.2d 478 (1943); *March v. Walker,* 48 Tex. 372 (Tex.Sup.1877). Therefore, we find the decision in *Whitehead v. State,* 450 S.W.2d 72 (Tex.Cr.App.1968) controlling. In *Whitehead,* the defendant was complaining of the trial court's refusal to submit an issue on self-defense. The Court of Criminal Appeals affirmed the trial court's decision and indicated that the evidence called for an instruction on accident, but not on self-defense, after quoting the following testimony:

"Q. You never intended to pull that trigger; you never intended to kill Art Peel?

A. No, sir, I never intended to kill him.

\*    \*    \*    \*    \*    \*

Q. You didn't want to hurt him, either, though, did you?

A. I didn't want to kill him.

Q. Did you intentionally pull the trigger or not? That's what I am trying to find out.

A. No, sir, I never had it in my mind. I flinched and the gun went off."

See also *Sias v. State of Texas,* 495 S.W.2d 890 (Tex.Cr.App.—1973) where the court

again refused to submit an issue on self-defense in a similar case. Appellant's points 9 and 14 are overruled.

■ Appellant's points 6, 10, and 11 complain of the trial court's failure to give definitions or instructions on "wrongful", "accident", and "proximate result". Rule 279, T.R.C.P. says:

". . . Failure to submit a definition or explanatory instruction shall not be deemed a ground for reversal of the judgment unless a substantially correct definition or explanatory instruction has been requested in writing and tendered by the party complaining of the judgment."

Appellant neither requested nor tendered definitions or instructions on these matters, so there is no ground for reversal on these points. *First State Bank & Trust Company of Edinburg v. George,* 519 S.W.2d 198 (Tex.Civ.App.—Corpus Christi 1974, writ ref'd n. r. e.). Appellant's points 6, 10, and 11 are overruled.

■ Appellant's point 8 asserts error in the use of the word "wrongful" instead of the word "willfully" in special issue 3. We find no error in this submission. The Supreme Court has construed these two terms in such a way that there can be no prejudicial error from the use of either word. In *Grieger v. Vega,* 153 Tex. 498, 271 S.W.2d 85 (1954), the court discussed the meaning of wrongful as used in the Wrongful Death Act. The court concluded that an intentional killing unexplained is presumed to be wrongful. In *Greer v. Franklin Life Ins. Co.,* supra, willfully was defined as intentional killing which is illegal. Both include the concept of an intentional killing without justification or excuse. Appellant's point 8 is overruled.

■ Appellant also complains in points 16 and 17 of the trial court's refusal to allow introduction of evidence on his suitability to be independent executor as the proponent of the will. Appellant, however, was allowed to introduce this evidence subsequently during the course of the trial. We find that no prejudice is shown where excluded evidence is subsequently admitted. *Coulson v. Clark,* 319 S.W.2d 183 (Tex.Civ.

App.—Austin 1958, writ ref'd n. r. e.); *Turner v. Hodges' Estate,* 219 S.W.2d 522 (Tex.Civ.App.—Fort Worth 1949, writ ref'd n. r. e.). Appellant's points 16 and 17 are overruled.

■ Appellant's points 18 and 19 complain of much of the testimony of Dr. Joseph Rupp as invading the province of the jury. Opinion testimony of experts is based upon two elements. First, the subject of the testimony must be so tied to some science, business, profession, or occupation as to be beyond the average understanding of the layman. Second, the witness must have the necessary expertise, knowledge, or skill in the area so that his opinion will be helpful to the trier of fact. McCormick & Ray, Texas Practice Evidence, Sec. 1400 (1956) and cases cited therein. There is, therefore, no general rule which precludes a properly qualified expert from giving his opinion and this is true even though his opinion is on an ultimate issue in a case. In *Scalf v. Collin County,* 80 Tex. 514, 16 S.W. 314 (1891), the Supreme Court said:

". . . When the issue is one upon which the witness may properly state his opinion, he may do so, notwithstanding his answer embraces the very issue on trial. The conclusion of the witness is then testified to, as any other fact to be considered by the jury, for what they may believe it to be worth. In many cases witnesses may testify to the existence of the very fact to be found by the jury. . . ."

Also, see *Payne v. Hartford Fire Insurance Company,* 409 S.W.2d 591 (Tex.Civ.App.—Beaumont 1966, writ ref'd n. r. e.); *Welch v. Shaver,* 351 S.W.2d 588 (Tex.Civ.App.—Amarillo 1961, writ ref'd n. r. e.); Norvell, Invasion of the Province of the Jury, 31 Tex.L.Rev. 731 (1953). Appellant's points 18 and 19 are overruled.

Finally, in his points 20 and 21, appellant sets forth that the trial court erred in reading to the jury, after deliberation had begun, selected portions of Dr. Rupp's testimony over appellant's objection.

Reading testimony to the jury during their deliberations is provided for in Rule 287, T.R.C.P. There it is stated that if the jury disagrees as to the statement of any witness, they may, upon applying to the court, have read to them from the court reporter's notes that part of such witness' testimony on the point in dispute. In our case, the jury requested a reading of some of Dr. Rupp's testimony as follows:

"Can we obtain Dr. Rupp's testimony in reference to the possibility of two shots being fired accidentally?"

When the jury requests a witness' testimony be read back to them on a point, the trial judge has broad discretion in deciding what part of the testimony of a witness is relevant to the point in dispute. And only where there is an abuse of that discretion with resulting harmful effects will his action be held erroneous. *Aetna Casualty and Surety Company v. Scott*, 423 S.W.2d 351 (Tex.Civ.App.—Houston [14th Dist.] 1968, no writ). Here the appellant has failed to demonstrate an abuse of the trial judge's discretion in that he has not shown what testimony was read back to the jury nor has he shown any harmful effect from the reading back of testimony. Appellant's points 20 and 21 are overruled.

The judgment of the trial court in cause # 110,807–A is affirmed. That part of the judgment of the trial court in cause # 115,-954–B that awards damages, actual and exemplary, is reversed and here rendered that the appellees take nothing. That judgment in all other aspects is affirmed. Costs are taxed one-half to the appellees and one-half to the appellant.